Dino CINEL

v.

Harry F. CONNICK, et al.

Civ. A. No. 92–721.

United States District Court, E.D. Louisiana.

May 6, 1992.

---

Edwin A. Stoutz, Jr., Stoutz & Charbonnet Law Offices, Arthur A. Lemann, III, Lemann, O'Hara & Miles, New Orleans, La., for Dino Cinel.

Victoria L. Bartels, Wessel, Bartels & Ciaccio, New Orleans, La., for Harry F. Connick, Raymond Bigelow.

Michael Gerard Riehlmann, Comardo & Associates, City Attorney's Office, Laurie Anne White, City Attorney's Office, New Orleans, La., for George Tolar.

Gary Raymond, pro se.

John Emerson Galloway, Jack Emile Chappuis, Jr., Galloway, ·Johnson, Tompkins & Burr, Jacques Francois Bezou, DeRussy, Bezou & Matthews, New Orleans, La., for David Paddison.

Raymond Joseph Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John Robert Martzell, Martzell, Thomas & Bickford, New Orleans, La., Michael Phillip Mentz, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for Darryl J. Tschirn.

·Gerard Alford Bos, Stephen B. Lemann, Henry Price Mounger, III, Monroe & Lemann, New Orleans, La., for Richard Angelico, Pulitzer BRDCSTG Co.

Rutledge C. Clement, Jr., Mary Ellen Roy, Debra J. Hale, Phelps Dunbar, New Orleans, La., for Geraldo Rivera, Tribune Entertainment, WDSU Television Inc.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are the parties' many contentions, given on the Court's request, to show cause: (1) why the Court's March 26, 1991 Order temporarily prohibiting anyone from destroying, transferring or disposing of originals or copies of certain materials seized from plaintiff's residence should not be made permanent,[1] and (2) why the parties and all others with actual notice of this order should not be required to submit to the Court, *in camera*, an inventory of any of these materials they possess.

For the reasons that follow, plaintiff's motion to rescind the March 26 order is DENIED, and IT IS ORDERED that the Court's March 26 temporary injunction is made permanent and is extended to the conclusion of this litigation as to all the material at issue. The state criminal district court's order requiring anyone not involved in law enforcement who possesses materials seized from plaintiff's residence,

---

1. Plaintiff responded to the Court's show cause order with a motion to rescind the March 26 order.

or copies thereof, to turn the property over to that court, is hereby STAYED pending the conclusion of this litigation.

IT IS FURTHER ORDERED that the all parties and all others with actual notice of this order shall submit to the Court within ten days of such notice an inventory of any materials in their actual or constructive possession that was seized from plaintiff's residence, or copies thereof. The media defendants' inventories shall remain with the Court under seal unless another party to this litigation can demonstrate to the Court why the qualified reporter's privilege should yield to that party's interest in reviewing the inventory.

## BACKGROUND

In 1988, plaintiff, Dino Cinel, was a Roman Catholic priest at St. Rita's Catholic Church in New Orleans, Louisiana. While plaintiff was out of the country, Father Tarantino, another priest at the rectory where plaintiff lived, came upon a variety of sexually oriented materials in plaintiff's room: (1) commercially produced magazines and films depicting young boys nude, or engaged in sexual activity, (2) publicly available pornographic magazines and films, such as Playboy, Penthouse, and the like, and (3) homemade videotapes of plaintiff engaged in homosexual activity, primarily with two young men, Christopher Fontaine and Ronald Tichenor.

The District Attorney's office eventually investigated, determined that Fontaine and Tichenor were consenting adults at the time of their sexual involvement with plaintiff, and decided for the time not to prosecute plaintiff.

Mr. Cinel resigned from the priesthood, married and moved to New York to take a college teaching job. He complains that one defendant, George Tolar, leaked "confidential law enforcement information" about where to find Fontaine and Tichenor to another defendant, Gary Raymond. Plaintiff says that Raymond then solicited Fontaine and Tichenor as clients for the defendant, David Paddison. Fontaine, represented by Paddison and Darryl Tschirn,

then sued plaintiff and the Church in state civil court in 1989.

In the spring of 1990, in connection with the state civil proceedings, that court issued a subpoena duces tecum directing Tolar to turn over to Paddison and Tschirn the materials found in plaintiff's room. Pursuant to a consent judgment (to which plaintiff was not a party), the District Attorney's office released the materials to Paddison and Tschirn as custodians and authorized Raymond to make copies of the material "upon the request of any parties to this litigation."

A year later, plaintiff says, Raymond leaked copies of this material to still another defendant, Richard Angelico, a local television news and investigative reporter. Angelico interviewed Fontaine, went to Florida to see Tichenor, and prepared a news story about plaintiff, Fontaine and Tichenor.

Later, a federal grand jury was convened, and, pursuant to subpoena, Raymond and Paddison turned over the originals of the material to the grand jury.

After the *Washington Times* did a story about plaintiff, and Angelico broadcast his piece, the District Attorney's office decided to prosecute plaintiff under a one count bill of information charging him with possession of child pornography. The state criminal district court quashed the bill of information on the ground that plaintiff had been granted transactional immunity from prosecution. The District Attorney's office has appealed, and that appeal remains unresolved.

On February 5, 1992, the state criminal district court issued an order commanding all parties not involved in law enforcement to return to that court by February 14 all copies of the materials removed from plaintiff's room. The Louisiana Fourth Circuit Court of Appeal stayed the order and directed the criminal district court to conduct a hearing on the matter of the retrieval of the material. The court scheduled a hearing for March 30, 1992.

Meanwhile, on February 26, 1992, plaintiff filed this suit, alleging, among other things, that the defendants in this story

conspired to violate plaintiff's federal constitutional and statutory rights, as well as his state law rights to privacy, due process, and fair trial. The matter of the possible inaccessibility of important material because of the immediacy of a state court order came to this Court's attention.

On March 26, 1992, this Court ordered that all parties who possess material or copies of material removed from plaintiff's room retain that property and refrain from destroying or transferring it to anyone else, including the state criminal district court. Because of the threat that this Court's jurisdiction and responsibilities for this case could be obstructed, the Court ordered the parties to appear for a hearing on May 6, 1992 to show cause why the Court's March 26 order should not be made permanent. The Court also asked the parties (particularly the media defendants) to brief the issue of whether the Court can permissibly order all parties, including the media defendants, to submit to the Court an inventory of the materials or copies of the seized materials they possess. The issue is of particular interest to the media defendants.

On March 30, 1992, the state criminal district court apparently reaffirmed its February 5 order that all non-law enforcement parties turn over all copies of the seized materials to the court, and set a May 7 deadline for production.[2] This Court would hope to avoid any institutional clash with the state court, but it must act to protect its jurisdiction over this case and to insure that all sides in this dispute receive a fair trial on a level playing field. The Court emphasizes, however, that it does not suggest the state criminal district court has acted with bad motive.

## LAW AND APPLICATION

### I.

Plaintiff urges the Court to lift its March 26 temporary injunction and allow the state criminal district court to enforce its order that all parties in possession of originals and copies of the materials seized from plaintiff's residence turn them over to that court for disposition. Plaintiff advances two arguments: Plaintiff maintains that all the materials that allegedly constitute child pornography under Louisiana law are relevant evidence in the ongoing state criminal prosecution of plaintiff. Plaintiff says that the state court should be able to order these things turned over to it under its inherent power to maintain control over criminal proceedings.[3] Plaintiff adds that the homemade videotapes and pictures, and the so-called "garden variety" pornographic materials are not needed in the criminal prosecution and are not relevant to this federal civil case. Thus, plaintiff says, the state criminal district court has the right to preside over the disposition of this property and the copies of it according to the Louisiana statute governing the disposal of material seized in connection with criminal cases. *See* La.R.S. art. 15:41.[4]

---

**2.** Since the Court's March 26 order, plaintiff has joined Geraldo Rivera and Tribune Broadcasting Co. as defendants because they published copies of some of the seized material on Mr. Rivera's nationally syndicated television program. This Court's March 26 order applies to Mr. Rivera and Tribune as, apparently, does the criminal court's order.

**3.** Article 17 of the Louisiana Code of Criminal Procedure provides:

A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so con-

trol the proceedings that justice is done. A court has the power to punish for contempt.

Plaintiff's reliance on Article 17 is betrayed by its reliance as well on La.R.S. 15:41, which applies if the material at issue has no evidentiary value. The distinction plaintiff seeks to make between material covered by Article 17 as opposed to that covered by La.R.S. 15:41 is unconvincing.

**4.** Article 15:41 says that when seized property is "not to be used as evidence or is no longer needed as evidence:"

(1) The seized property shall be returned to the owner, unless a statute declares the property to be contraband, in which event the court shall order the property destroyed if the court determines that its destruction is in the public interest; otherwise Paragraph (2) of this Section shall apply.

The Court rejects plaintiff's contentions. Without questioning the correctness or incorrectness of the state criminal court's order under Louisiana law, this Court holds that under the All Writs Act, 28 U.S.C. § 1651(a), and the "in aid of" exception to the Anti–Injunction Act, 28 U.S.C. § 2283, this Court's temporary injunction must be made to extend to the conclusion of this litigation, and the state criminal district court order to turn over all materials shall be stayed pending the conclusion of this litigation. This Court's power and authority to act are clear.

### A.

The Anti–Injunction Act expresses a general prohibition, subject to three specific exceptions, about federal court injunctions that stay state court proceedings. This Court's jurisdiction is solemnly recognized by one of those exceptions. The Anti–Injunction Act instructs that:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or *where necessary in aid of its jurisdiction*, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (emphasis supplied). The All Writs Act confirms the solemn congressional recognition of this fundamental doctrine:

> The Supreme Court and all courts established by Act of Congress may issue all writs *necessary or appropriate in aid of their respective jurisdictions* and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a) (emphasis supplied). As suggested by the mirror-image statutory language, the Anti–Injunction Act's "in aid of" exception "was intended 'to conform to section 1651 of this title [the All Writs Act, 28 U.S.C. § 1651].' " *United States v. District of Columbia*, 654 F.2d 802, 809, n. 16 (D.C.Cir.1981) (quoting Reviser's Note to § 2283). Thus, the Anti–Injunction Act recognizes this Court's power to protect its jurisdiction under the All Writs Act. Both federal statutes direct similar and parallel grants of authority to federal courts. Without it, our judicial system could deteriorate to a mere pretext about the ability of litigants to get a fair, an unquestionably fair, trial. Justice would be diminished to little more than a confused jumble of pretenders to the courts' jurisdictional prerogative, with few courts willing, or able, to ensure the promise of fairness and impartiality.

The U.S. Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent frustration of orders it has previously issued." *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977) (citations omitted). To add to the vitality of this doctrine the Court emphasized that " 'a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.' " *Id.* at 173, 98 S.Ct. at 372 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 272, 63 S.Ct. 236, 238, 87 L.Ed. 268 (1942)).

*New York Telephone* also teaches that the All Writs Act permits a court to enjoin not only parties to the action, but nonparties as well. The Supreme Court made certain all know that "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons

---

(2) If the seized property is contraband, and the court determines that it should not be destroyed, or if the owner of noncontraband property does not claim it within two years after its seizure, the court shall order:

(a) A sale of the property at a nonjudicial public sale or auction, if the court concludes that such a sale will probably result in a bid greater than the costs of the sale. The proceeds of the sale shall be administered by the court and used exclusively for the maintenance, renovation, preservation, or improvement of the court building, facilities, or records system.

(b) If the court concludes that the cost of a public sale would probably exceed the highest bid, the court may order the property transferred to a public or a nonprofit institution or destroyed or may make such other court ordered disposition as it deems appropriate.

who, though not parties to the original action or engaged in wrongdoing, *are in a position to frustrate the implementation of a court order or the proper administration of justice,* and encompasses even those who have not taken any affirmative action to hinder justice." *Id.* 434 U.S. at 174, 98 S.Ct. at 373 (citations omitted). Therefore, even non-parties may be enjoined from taking certain kinds of action that could inhibit a court's ability to correctly manage the case. *See generally Pennsylvania Bureau of Corrections v. U.S. Marshals,* 474 U.S. 34, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985).

Our Supreme Court has also written that the "in aid of" exception to the Anti–Injunction Act functions to authorize "federal injunctive relief [that] may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). That is at the core of the issues before the Court today.

■ The Fifth Circuit has also provided guidance to courts applying the All Writs Act in *ITT Community Dev. Corp. v. Barton,* 569 F.2d 1351 (5 Cir.1978). The Circuit wrote that the power granted by the All Writs Act "is firmly circumscribed, its scope depending on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power." *Id.* at 1358–59. Thus, we must use this power with caution and restraint. A court may not rely on the Act to enjoin conduct that is "not shown to be detrimental to the court's jurisdiction." *Id.* at 1359. Instead, any order under the Act must be "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *Id.* (footnote omitted). Thus, the Fifth Circuit has noted that a district court may rely on the All Writs Act to control

actions or conduct that would inhibit its ability to resolve or manage a case before it.[5] It is that concern which drives the conclusions reached here.

## B.

■ In this case, the state criminal district court's order offers the clear danger that the playing field in this federal civil suit will favor only the plaintiff; it sets into motion a procedural mechanism that could result in the destruction or unavailability of possibly relevant evidence.

The alleged child pornography, the homemade pictures and videotapes, and the commercially produced "garden variety" pornography all could eventually be ruled relevant to this case. No one can predict now what will or will not be let into evidence. Such an argument to the contrary cannot be taken seriously. Plaintiff has filed a wide-ranging complaint in which he contends that all the material at issue was private, and the defendants' actions in releasing and publishing the material invaded his privacy rights under both federal and state law. Despite his contrary assertions now, plaintiff's complaint does not limit his claimed privacy interest to the material that was published by Geraldo Rivera and Richard Angelico.

The Court must see to it that all parties' rights of access to possibly relevant evidence are preserved. That seems starkly obvious. This litigation is in its infancy. At this early stage, the Court simply cannot determine the relevance to this suit of any of the materials seized from plaintiff's room. That would give new meaning to *in limine* rulings. Under plaintiff's complaint, everything that was seized from his residence is claimed to be private. The defendants must be assured access to these materials, if they are to be able to try to fully and fairly refute plaintiff's claimed privacy interest in this property.

Under La.R.S. 15:41, it is possible that the state criminal district court ultimately could order all the copies of the materials

---

**5.** In a recent decision, the Fifth Circuit reaffirmed the *Barton* approach to the All Writs Act. *See Williams v. McKeithen,* 939 F.2d 1100, 1104–05 (5 Cir.1991).

seized from plaintiff's residence (except the alleged child pornography[6]) transferred back to Mr. Cinel, or destroyed as contraband.

Further, the court's order that all of the alleged child pornography material be returned to it would place a harsh burden on the litigants in this federal case by requiring them to go to the state criminal district court to get discovery of evidence that might be important to their defenses to the suit in this Court. Indeed, the criminal court conceivably could deny all the defendants access to the evidence. That potential is unacceptable. Such an encroachment is intolerable.

Thus, if this Court were to release the material to the sole control of the state criminal district court, that court would have the power to determine whether potentially relevant evidence could be used before this Court at trial. To subject the control and disposition of potentially relevant evidence to another court would be patently detrimental to this Court's jurisdiction because it would have "the practical effect of diminishing the [C]ourt's power to bring the litigation to a natural conclusion." *Barton*, 569 F.2d at 1359. Such a result would seriously inhibit the Court from managing and controlling this case. Indeed, this is a case, as contemplated by Congress and the Supreme Court, in which the actions of parties and non-parties with respect to the materials at issue could "frustrate ... the proper administration of justice" in this Court. *See New York Telephone*, 434 U.S. at 174, 98 S.Ct. at 373. Accordingly, an injunction and stay preserving the status quo, binding on parties and non-parties, is necessary to ensure that the Court's authority to decide this case is not impaired through the destruction or unavailability of relevant evidence. *See Atlantic Coast Line*, 398 U.S. at 295, 90 S.Ct. at 1747; *New York Telephone, supra.*

At the March 26 hearing, the Court requested that any interested party brief the issue of whether the Court can compel all parties to produce, *in camera*, a written inventory of all originals or duplicates of the seized materials they may possess.[7] The media defendants responded by invoking the qualified reporter's privilege one finds in the federal common law, and under Louisiana law.[8] It is this Court's view that neither privilege shields the media defendants from the Court's order. Thus, the Court will order all parties and anyone else with actual notice of this order to produce written inventories. However, the media defendants' inventories will remain under seal, unless another party to this proceeding can convince the Court that the qualified privilege that does protect the media from requests for production of source materials should yield.

## A.

The reporter's privilege is part of the fabric of American law, but it is not

---

6. La.R.S. 15:41 applies only to material that "is not to be used as evidence or is no longer needed as evidence" in the criminal proceedings. Here, plaintiff's prosecution for possession of child pornography is ongoing, although the case is on appeal. Thus, this material is not subject to the criminal court's power to dispose of evidence under Article 15:41. The Court fails to understand how La.R.S. 15:41 can be properly invoked with an appeal still pending in the criminal case. What if the state criminal district court is reversed and the case goes to trial? How can one tell now exactly what part of these materials will or will not be relevant? It does not seem, now, to be possible or proper to fine tune these materials into categories of what will be and will not be relevant, or to say what is covered by Rule 17 as opposed to La.R.S. 15:41.

7. The Court specifically excluded from the potential inventory requirement "the U.S. Attorney, his Assistants, or individuals connected to any Federal grand jury inquiry into related issues." Some parties asked that the inventories be made to ensure against destruction of the material.

8. In federal courts, evidentiary privileges are governed by Federal Rule of Evidence 501. That Rule says that federal common law generally guides the privilege inquiry, except when "State law provides the rule of decision" as to a claim or defense, in which event "the privilege shall be determined in accordance with State law." Fed.R.Evid. 501. The parties have not clearly focused for the Court just how Rule 501 works when a claim implicates both federal and state law, and so the Court will analyze the qualified privilege under both regimes.

absolute. Generally, "[p]rivileges are strongly disfavored in federal practice." *See American Civil Liberties Union of Mississippi v. Finch*, 638 F.2d 1336, 1344 (5 Cir.1981); *see also Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5 Cir. 1980). In fact, the Fifth Circuit has indicated that it will not recognize a testimonial privilege unless the information at issue was received in the context of a confidential relationship. *See Finch, supra.* Thus, although some courts have recognized a federal common law qualified privilege in all source materials used by a reporter,[9] the Fifth Circuit has never extended this protection beyond the compelled disclosure of confidential informants. *See In re Selcraig*, 705 F.2d 789, 792 (5 Cir.1983) ("[T]he first amendment shields a reporter from being required to disclose the identity of persons who have imparted information to him in confidence."); *Miller, supra.* ("[A] reporter has a First Amendment privilege which protects the refusal to disclose the identity of confidential informants....").

Mindful of this Circuit's teaching regarding such privileges, the Court is bound to interpret the federal common law reporter's privilege narrowly, and will not extend it beyond the limits of *Selcraig* and *Miller.* The media defendants do not contend that the compelled disclosure of an inventory of the materials at issue would require them to disclose the identity of a confidential informant. The federal common law reporter's privilege provides no comfort to the media defendants in the context of this Court's order.

### B.

■ The Louisiana statutory privilege covers a wider array of a reporter's source material. La.R.S. 45:1459 provides:

[N]o reporter or news media organization ... shall be adjudged in contempt by any court in connection with any civil or criminal proceeding ... for refusing or failing to disclose any news which was not published or broadcast but was obtained or prepared by such person in the course of gathering or obtaining news, or the source of any such news, *even if such news was not obtained or received in confidence*, unless a court has found that the party seeking such news made a clear and specific showing that the news:

(a) Is highly material and relevant;

(b) Is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and

(c) Is not obtainable from any alternative source.

(emphasis supplied).

The media defendants maintain that the Court cannot itself order an *in camera*, sealed, production of inventories without first applying Section 1459's three-part test to its order. The Court does not read Section 1459 to apply here.

The language of the statute suggests that it should apply only to those cases in which a *party to a civil or criminal proceeding* requests that the court compel a reporter or news organization to produce source materials. The text requires that the "party" seeking to overcome the qualified privilege must make a clear and specific showing *to the court* that the three-part test is met. The statute on its face does not apply to a court-initiated order for a sealed, *in camera*, production of information.

Moreover, the protective policies that anchor the reporter's privilege are not offended by such a court order. Although no reported Louisiana decision addresses Section 1459 specifically, the Court finds instructive a Louisiana Supreme Court case discussing Sections 1452 and 1453 (establishing a qualified privilege for confidential informants and sources). *See In re Grand Jury Proceedings (Ridenhour)*, 520 So.2d 372 (La.1988).

In *Ridenhour*, the court noted that in weighing privilege claims, "the possible 'chilling effect' the disclosure will have on the freedom of the press and the ability to gather news" is a vital consideration. *Id.*

---

9. *See, e.g., United States v. Cuthbertson*, 630 F.2d 139, 147 (3 Cir.), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981) (*Cuthbertson I*); *Application of Behar*, 779 F.Supp. 273, 275 (S.D.N.Y.1991); *Loadholtz v. Fields*, 389 F.Supp. 1299, 1303 (M.D.Fla.1975).

**500**

at 376. We are reminded to balance the conflicting interests. Care must be taken to ascertain that the one requesting the information "is not on a mere fishing expedition and is not 'attempting to annex the journalistic profession as an investigative arm of the government.'" *Id.* (quoting *Branzburg v. Hayes,* 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1972) (dissenting opinion).

The media defendants do not convincingly argue that the extremely limited disclosure of the sort ordered here would "chill" the freedom of the press. Unless another party can overcome the heavy burden, only the Court will ever see the inventories the media defendants submit. Further, there is no risk here that confidential relationships-present or future-will be threatened. The Court order compelling this disclosure is merely driven by the Court's responsibility to see to it that relevant, potentially non-privileged evidence will remain accessible.

In sum, given the text of Section 1459, the policies historically underlying the reporter's privilege, and the limited and secret nature of the disclosure, the Court holds that the media defendants do not have a qualified privilege that insulates them from their disclosure, *in camera* and under seal, of inventories of the potential evidentiary materials they hold.