**ON COMMAND VIDEO CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**LODGENET ENTERTAINMENT CORPORATION, a Delaware corporation, Defendant.**

**No. C95–0546 SBA.**

United States District Court, N.D. California.

Aug. 8, 1997.

---

918

David Fairbairn, Kinney & Lange, P.A., Minneapolis, Minnesota.

Carrie L. Walthour, Limbach & Limbach, San Francisco, Gillin, Jacobson, Ellis, Larsen & Doyle, Richard Doyle, Jr., Luke Ellis, Berkeley, CA.

*ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS OF MAGISTRATE JUDGE JAMES*

ARMSTRONG, District Judge.

This action is a patent infringement suit brought by plaintiff On Command Video ("plaintiff" or "OCV") against defendant LodgeNet Entertainment Corporation ("defendant" or "LodgeNet"). The parties are presently before the Court on defendant's Objections to the Magistrate's Report and Recommendations ("the Report"). Having read and considered the papers filed, and having reviewed the record, the Court SUSTAINS in part and OVERRULES in part defendant's objections.[1]

---

1. Pursuant to Civil Local Rule 7–1(b), the Court adjudicates the instant matter without oral argu- ment.

920

## BACKGROUND

Plaintiff alleges that defendant has infringed and continues to infringe its patent which encompasses the technology for a video movie delivery system. On June 5, 1995, at the outset of this case, the parties submitted to the Court a stipulated Protective Order governing the exchange of confidential discovery materials. Paragraph 11 of the Protective Order provided as follows:

> Any information designated as Confidential Information shall not be used by the other party for any purpose other than in connection with preparation of the parties [sic] analysis of issues presented in this litigation.

The Court approved the Protective Order on June 8, 1995 and the Order was filed on June 9, 1995.

On February 27, 1996, plaintiff used materials produced by defendant during discovery and subject to the Protective Order as the basis for filing a separate lawsuit against defendant in San Francisco County Superior Court. Viewing plaintiff's actions to be in violation of the Protective Order, defendant filed a Motion to Enforce Protective Order before the Court. Plaintiff responded by serving a Motion for Sanctions against defendant pursuant to Federal Rule of Civil Procedure 11. The Court referred these matters to Magistrate Judge Maria–Elena James for findings and recommendations.

On April 3, 1997, the Magistrate issued her Report in which she concluded, *inter alia,* that plaintiff did not violate the Protective Order and that there was no basis for imposing contempt sanctions or enjoining the state court lawsuit. Defendant now presents the following objections to the Magistrate's Report:

- The Magistrate erred as a matter of law by refusing to recommend enforcement of the plain language of the Protective Order. The Magistrate's interpretation of the Protective Order is clearly erroneous.
- The Magistrate's conclusion that the purpose of the Protective Order is not evident from the face of the Protective Order is clearly erroneous.
- The Magistrate erred as a matter of law by recommending that OCV be allowed to invoke the substantial compliance defense.
- The Magistrate's conclusion that OCV substantially complied with the Protective Order is clearly erroneous.
- The Magistrate's conclusion that the Court is barred by the Anti–Injunction Act from issuing an injunction to prevent OCV from pursuing its state court action is clearly erroneous.
- The Magistrate's recommendations not to fine OCV's attorneys, and not to award attorneys' fees to LodgeNet are clearly erroneous.
- The Magistrate erred as a matter of law in stating that LodgeNet's subsequent motion to enforce the Protective Order did not appear to have been filed within the safe harbor period.

(Def.'s Obj. at 2–3.) Defendant also requests that the Court render an advisory opinion concerning whether it would exercise supplemental jurisdiction over the state court action. (*Id.* at 11.)

## STANDARD OF REVIEW

A magistrate judge's findings and recommendations on matters which are dispositive of a claim or defense are reviewed *de novo.* See 28 U.S.C. § 636(b)(1)(C); Fed. R.Civ.P. 72(b). A magistrate's determination of non-dispositive matters is entitled to deference unless it is clearly erroneous or contrary to law. *Grimes v. City & County of San Francisco,* 951 F.2d 236, 241 (9th Cir. 1991) (citing 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a)).

Issues related to a protective order are collateral to the substantive issues in the litigation, and hence, are deemed nondispositive. *C.f., Hutchinson v. Pfeil,* 105 F.3d 562, 566 (10th Cir.1997). Similarly, the decision of whether to impose Rule 37 sanctions for discovery violations is also considered a nondispositive matter. *See Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1465 (10th

Cir.1988).[2] However, because only a district court may hold a party in contempt, *Grimes,* 951 F.2d at 240, the Magistrate's findings on the issue of civil contempt will be reviewed *de novo.*[3]

## DISCUSSION

### A. ENFORCEMENT OF THE PROTECTIVE ORDER

■ The salient question presented is whether plaintiff violated the parties' Protective Order by using discovery obtained thereunder for the purpose of initiating a separate state court lawsuit. A protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose. *In re Dual–Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir.1993).

The Magistrate determined that there was no such violation. In reaching this conclusion, the Magistrate reasoned, *inter alia,* that there was "no express provision which states that the filing of a subsequent action, which is based on protected confidential information, violates the Protective Order." (Report at 15.) She also found that "there is no express provision which states that the filing of a subsequent lawsuit based on protected. confidential information without prior amendment, or attempt to amend, the pleadings or the Protective Order, violates the Protective Order." (*Id.*)

■ The Court disagrees with the Magistrate's analysis of the Protective Order. Contrary to the findings of the Magistrate, paragraph 11 of the Protective Order unequivocally bars *all* uses of confidential materials *except* one—"[the] analysis of issues presented in *this* litigation." (Emphasis added). Although the Magistrate is technically correct that the filing of a state court action based on confidential information disclosed in this action is not expressly precluded, to construe the language of paragraph 11 as permitting plaintiff to engage in such conduct would render said provision meaningless. Indeed, as defendant correctly points out, it would have been impractical to attempt to articulate every conceivable impermissible use of discovery subject to the Protective Order. (*See* Def.'s Obj. at 5.)[4]

Plaintiff argues that a "literal" interpretation of the Protective Order is overly restrictive and would, in effect, immunize defendant for any wrongful acts uncovered during this litigation. (Pl.'s Opp'n at 6 (citing Report at 18 n. 14).) The Magistrate also expressed this concern, reasoning that the use of the term "presented" modifies "issues presented in this litigation", such that evidence of wrongful conduct could be used only in conjunction with claims which were *already* pleaded. (Report at 18 n. 14.) The Court finds such an interpretation of the Protective Order untenable, as there are no restrictions in the Protective Order concerning the addition of claims to this litigation nor is there any plausible basis therefor.

Finally, the parties dispute the purpose of the Order. The Court notes that the Protective Order does not expressly state its purpose. Nevertheless, the Court agrees with defendant that from the plain language of the Order, it is readily apparent that it is intended to limit the use of confidential information to this case. Plaintiff asserts that the purpose is to protect commercial secrets. (Mag.'s Rep. at 10.) Unfortunately for plaintiff, there are no terms in the Protective Order to corroborate such an interpretation.

---

**2.** A protective order is a discovery order subject to the provisions of Rule 37. *See Westinghouse Elec. v. Newman & Holtzinger, P.C.,* 992 F.2d 932, 935 (9th Cir.1993). Under Rule 37(b)(2)(D), a magistrate may impose order compelling a party to comply with a discovery order or to compensate the opposite party. *Grimes,* 951 F.2d at 241.

**3.** Defendant requests a de novo review of the Magistrate's Report, but frames its arguments under the "clearly erroneous" standard of review. However, the Court's rulings on the defendant's objections are the same regardless of which standard of review is applied.

**4.** Notably, this structure—of specifying the permissible use of confidential materials as opposed to specifying all impermissible uses—is repeated in the other provisions of the Protective Order. For example, the Protective Order does not specify to whom the materials may not be disclosed, but rather, in paragraph 2, it states to whom the materials *may* be shown. Similarly, paragraphs 6, 7, 15, 16, and 18 explicate how the material *may* be handled.

At bottom, the Court finds, based on a common sense, plain reading of paragraph 11 of the Protective Order, that plaintiff has violated the Protective Order and that defendant is entitled to its enforcement. The purpose of the Order is to limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order. As such, plaintiff is barred from using any confidential information subject to the Protective Order except in the instant litigation. *C.f., Winkler v. Eli Lilly & Co.,* ·101 F.3d 1196, 1203 (7th Cir.1996) ("we hold that the Anti–Injunction Act does not bar courts with jurisdiction ... from issuing injunctions to protect the integrity of their rulings, including pretrial rulings like discovery orders...."). Defendant's objections to the Magistrate's recommendation to not enforce the Protective Order is SUSTAINED.

## B. *CIVIL CONTEMPT FOR VIOLATION OF THE PROTECTIVE ORDER*

### 1. *Applicable Law*

The next issue presented is whether the Magistrate erred in recommending that plaintiff not be held in· civil contempt. "A court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act." *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146 (9th Cir.1983); Fed.R.Civ.P. 37(b)(2)(D). "[T]o succeed on its motion for civil contempt, [defendant] had to show by clear and convincing evidence that [plaintiff] violated the [Protective Order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [Protective Order]." *Wolfard Glassblowing Co. v. Willy Vanbragt, Mary Vanbragt d/b/a Zodiac Expressions,* 118 F.3d 1320, 1322 (9th Cir.1997) (citing *In re Dual–Deck,* 10 F.3d at 695).

### 2. *Analysis of Contempt Issue*

In the instant case, the Magistrate concluded that plaintiff should not be held in civil contempt because defendant failed to establish that plaintiff violated the Protective Order; that plaintiff's actions were not based on a good faith and reasonable interpretation of the order; and that plaintiff failed to substantially comply with the order. (Report at 23–26.) The Magistrate further denied defendant's request for contempt sanctions in the amount of $5,000 for violating the Protective Order and $1,000 per day until such time as plaintiff withdraws the state action. (*Id.* at 27.)

The Court agrees with defendant that the Magistrate's decision not to find plaintiff in civil contempt of the Protective Order is incorrect. Plaintiff has clearly violated the Protective Order and its efforts to comply therewith are virtually non-existent. In her Report, the Magistrate opined that plaintiff substantially complied with the Order and that plaintiff's conduct amounted to nothing more than a "harmless technical violation". (Report at 24–26.) To support these conclusions, the Magistrate noted plaintiff's attempts to seal the state court record and the fact that the state court pleadings did not disclose any proprietary information. (*Id.*) Relying on these findings, plaintiff asserts that "[its] actions certainly demonstrate substantial compliance with the Protective Order." (Pl.'s Resp. at 13.)

The difficulty with the Magistrate's reasoning is that the Protective Order is not limited to the mere disclosure of protected information. Rather, as defendant correctly points out, it prohibits *use*. (*See* Protective Order ¶ 11 ("Any information designated as Confidential Information shall not be. *used....*") (emphasis added).) Plaintiff's *use* of protected information to file a *separate* state court lawsuit—as opposed to *this* litigation—is tantamount to no compliance at all. The Court finds that plaintiff has not substantially complied with the Protective Order and the Magistrate's finding to the contrary is incorrect.

The Court also disagrees with the Magistrate's determination that plaintiff's actions were based on a good faith and reasonable interpretation of the order. *See Vertex Distrib. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir.1982) (noting that a party

should not be held in contempt if its conduct was "based on a good faith and reasonable interpretation of the court's order."). As discussed above, the Protective Order clearly prohibits all uses of information deemed confidential except one: the parties' analysis of issues presented in this litigation. For plaintiff to conclude that Paragraph 11 of the Protective Order could reasonably be interpreted as permitting the filing of a completely *separate lawsuit* in state court strains credulity. The Court therefore SUSTAINS defendant's objections to the Magistrate's conclusion that plaintiff should be held in civil contempt for violation of the Protective Order.[5]

### 3. *Sanctions for Civil Contempt*

The Magistrate declined to impose a civil contempt fine because she determined that (1) there was no basis for a finding of contempt and (2) defendant failed to substantiate its request for a $5,000 contempt fine and $1,000 per day coercive fine. (Report at 27.)

██ Defendant asserts that the Magistrate erred in declining to assess a contempt fine against the plaintiff and to award attorneys' fees to defendant. Insofar as the Magistrate based this decision on the conclusion that plaintiff did not violate the Protective Order, defendant is correct. However, defendant ignores the Magistrate's finding that defendant failed to present a factual basis to substantiate the amounts requested. (Report at 27.) Since defendant failed to do so, the Magistrate did not err in denying defendant's request. See *Dual–Deck*, 10 F.3d at 696 (noting that party aggrieved by contemnor is entitled only to " 'actual loss' for injuries resulting from the noncompliance.' ") (quoting in part *In re Crystal Palace Gambling Hall*, 817 F.2d 1361, 1366 (9th Cir. 1987)). Defendant's objection to the Magistrate's recommendation to not fine or impose attorneys' fees against plaintiff is OVERRULED.

5. In light of the Court's determination that plaintiff did not substantially comply with the Protective Order, the Court does not reach the issue of

### 4. *Injunction of the State Court Action*

The Magistrate concluded in her Report that the Court is precluded under the Anti–Injunction Act, 28 U.S.C. § 2283, from enjoining plaintiff from pursuing the state court action. The Anti–Injunction Act states:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect and effectuate its judgments.

28 U.S.C. § 2283.

██ Whether to impose an injunction is a matter of judicial discretion. *Blalock Eddy Ranch v. MCI Telecommunications Corp.*, 982 F.2d 371, 375 (9th Cir.1992). Exceptions to the Act are strictly construed. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 145–46, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988). Any doubts concerning the propriety of enjoining a state court action should be resolved in favor of permitting the action to proceed. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).

██ In the instant case, defendant argues an injunction barring the state court action from proceeding is "necessary and appropriate to effectuate and prevent further frustration of the Court's Protective Order." (Def.'s Obj. at 9.) Defendant further contends that an injunction would mitigate some of the damage resulting from the plaintiff's violation of the Protective Order. Defendant fails to present any authority or evidence to support these contentions and the Court is not otherwise convinced that an injunction barring further prosecution of the state court action is either necessary or appropriate. Therefore, the Court OVERRULES defendant's objection in this regard.

### 5. *Conclusion Regarding Civil Contempt*

The Court has concluded that plaintiff is barred under the Protective Order from using confidential information for any purpose

whether plaintiff was entitled to invoke the substantial compliance defense.

other than analyzing the issues presented in this case. Any violation of this Order of enforcement which results in actual damage to defendant may be compensable under the authority cited above. While the Magistrate did not err in declining to award civil contempt sanctions or attorneys' fees against plaintiff and finding that an injunction of the state court proceedings is inappropriate, defendant is not foreclosed from presenting a *properly supported* request for civil contempt sanctions for actual damages resulting from a violation of the enforcement of the Protective Order.[6]

However, given the fact that this case has already been *overlitigated*, the parties are warned that no requests or motions of any nature will be considered absent a good faith effort to resolve the dispute without court intervention. In addition, all requests and motions must be supported by applicable legal authority and declarations to support any factual assertions, if appropriate. Failure to comply with these requirements may subject the parties and/or their attorneys to sanctions.

### C. *PLAINTIFF'S RULE 11 MOTION*

As noted, plaintiff filed a motion for Rule 11 sanctions against defendant based on the latter's initial filing of its Motion to Enforce the Protective Order on April 12, 1996. On May 10, 1996, defendant filed a second Motion to Enforce the Protective Order. *Id.* Defendant did not formally withdraw its first Motion. (Pl.'s Opp'n at 22.) On May 13, 1996, plaintiff filed another Motion for Sanctions with the Court. *Id.* at 23.

The Magistrate found that although defendant's second motion regarding the Protective Order was not filed within the Rule 11 safe harbor period, sanctions were *not* warranted against defendant. (Report at 41.) Notwithstanding the fact that she *denied* plaintiff's motion for sanctions, defendant

now argues that the Magistrate's finding that its substitute motion was filed outside the safe harbor window is clearly erroneous.

■ Since the Magistrate declined to impose sanctions, her comments regarding the safe harbor period are irrelevant.[7] Accordingly, the Court OVERRULES AS MOOT defendant's objection that the Magistrate erred in stating in dicta that defendant did not comply with the safe harbor rule.

### D. *EXERCISE OF SUPPLEMENTAL JURISDICTION*

Defendant objects to the Magistrate's refusal to determine whether this court *would exercise* supplemental jurisdiction over the state law-based claims. Although defendant's argument is not entirely clear, it appears that it contends that the Court should now state whether or not it would exercise supplemental jurisdiction. (Def.'s Obj. at 11.) Defendant's request for an advisory opinion is DENIED. The Court will decide whether to exercise supplemental jurisdiction if and when plaintiff seeks to have such claims litigated in this Court.

### E. *SCHEDULING ISSUES*

An 8–12 day jury trial was originally scheduled to commence on March 17, 1997. However, because the parties underestimated the length of the trial, the Court was unable to accommodate the expanded trial as scheduled due to a conflict with other matters previously set for trial. As a result, on March 12, 1997, the Clerk informed the parties that the March 17 trial date was vacated. Pursuant to the Court's instructions, the Clerk also informed the parties to meet and confer regarding the possibility of stipulating to have further proceedings take place before a Magistrate Judge. Although the parties were instructed to contact the Court regarding their intentions, the parties failed to do

---

**6.** Any further matters pertaining to the Protective Order will be referred to the Magistrate.

**7.** Defendant does note in its opening brief that plaintiff failed to comply with Rule 11 "and is subject to sanctions for doing so." (Def.'s Obj. at 11.) However, it is not until the reply brief that defendant actually *requests* the imposition of sanctions. Under these circumstances, the Court

need not consider defendant's request. *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.) ("[i]ssues not 'specifically and distinctly raised and argued' in the opening brief need not be considered by the court."), *cert. denied,* —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995) (citations omitted).

so.[8] Therefore, the Court will schedule a further Case Management Conference for the purpose of rescheduling the trial date in this action.

In the event the parties are in agreement that the instant matter may be referred to a Magistrate Judge of this Court for further proceedings, the parties may submit a stipulation to that effect, thereby obviating the need to file a joint Case Management Statement and to appear at the further Case Management Conference.

### *CONCLUSION*

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant's objection to the Magistrate's finding that plaintiff did not violate the Protective Order is SUSTAINED. Plaintiff shall not use any confidential information subject to the Protective Order except in this litigation.

2. Defendant's objection to the Magistrate's finding that plaintiff was not in civil contempt is SUSTAINED.

3. Defendant's objection .to the Magistrate's finding that plaintiff should not be sanctioned or subject to attorneys' fees is OVERRULED.

4. Defendant's objection to the Magistrate's finding that the Court may not enjoin the state court proceeding is OVERRULED.

5. Defendant's objection to the Magistrate's findings on the Rule 11 motion is OVERRULED.

6. Defendant's request for a determination of whether the Court would exercise supplemental jurisdiction over the causes of action presented in the state court action is DENIED.

7. A further case management conference in the above-captioned matter shall take place on *September 24, 1997 at 3:00 p.m.,* in Courtroom 3, 1301 Clay Street, 3rd Floor, Oakland, California, 94612. The parties shall

file a *joint* (updated) case management statement at least ten (10) days prior to the conference. Failure to timely file a case management conference statement may result in sanctions.

IT IS SO ORDERED.

### REPORT & RECOMMENDATION

JAMES, United States Magistrate Judge.

Before this Court are Defendant's Motion to Enforce the Confidential Protective Order and Motion for Sanctions. Having reviewed the parties' moving papers, the applicable statutory and case law authority, and Good Cause Appearing, this Court recommends that the District Court DENY Defendant's Motion to Enforce the Protective Order and DENY Plaintiff's Motion for Sanctions.

### BACKGROUND OF UNDISPUTED FACTS

As Defendant's Motion to Enforce the Confidential Protective Order, hereinafter Defendant's Motion, and Motion for Sanctions do not necessarily pertain to the essence of Plaintiff's federal action, the Court does not present a factual background, but instead sets forth the undisputed facts before presenting its factual findings:

On February 16, 1995, Plaintiff filed this federal action against Defendant alleging patent infringement of U.S. Patent No. Re. 34,611. (Def. Mot. p. 2; Decl. D. Fairbairn, p. 2; Pl. Opp. p. 1). .

On April 17, 1995, Defendant filed and served its Answer and Counterclaim alleging non-infringement, invalidity and unenforceability of the patent. (Def. Mot. p. 2; Decl. D. Fairbairn, p. 2; Pl. Opp. p. 1).

In May 1995, the parties produced their initial disclosures and exchanged documents, pursuant to Federal Rule of Civil Procedure 26(a) and Civil L.R. 16. (Def. Mot. p. 3; Decl. D. Fairbairn, p. 2; Pl. Opp. p. 2).

---

**8.** At that time, the parties were informed that September 1997 was the next available time period for trial. However, because the parties never contacted the Clerk regarding whether they are receptive to stipulating to a Magistrate Judge for trial, a new trial date was not set. In any event, September 1997 is no longer available for the trial in this action, as a criminal trial, which enjoys priority over civil actions, is scheduled to commence at that time.

On June 2, 1995, the parties entered into the "Stipulated Protective Order Governing Exchange of Information Deemed Confidential by The Parties," hereinafter the Protective Order, which governed the exchange of confidential information during the course of litigation, including formal and/or informal discovery. (Def. Mot. p. 3.; Decl. D. Fairbairn, p. 2 & Ex. A; Pl. Opp. p. 2).

On June 8, 1995, the District Court granted the Protective Order. (Def. Mot. p. 2; Decl. D. Fairbairn, Ex. A p. 10; Pl. Opp. p. 2).

On July 31, 1995, Defendant served its Response to Plaintiff's First Amended Set of Interrogatories by Plaintiff and Counter Defendant. (Def. Mot. p. 4; Decl D. Fairbairn, p. 3 & Ex. B, p. 1; Pl. Opp. p. 2; Decl. R. Doyle, p. 2). The cover sheet of Defendant's responses was marked "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" and each lower right hand page was marked "Confidential Subject to Protective Order." (Def. Mot. p. 4. & Decl. D. Fairbairn, Ex. B, p. 1). Interrogatory No. 3 requested:

> State whether LodgeNet has ever conducted or authorized an inspection and analysis of an OCV system, and if so, state the reason why such an inspection or analysis was conducted, identify the persons involved, and when it occurred.

In response, Defendant stated, in part:

> LodgeNet personnel have evaluated OCV equipment, systems and services. In January 1990, Casey Flynn and James Salas evaluated an OCV system at the Stanford Parks Hotel, Menlo Park California. In March 1992, Veto Hills, Steve Truckenmiller and David Bankers evaluated two OCV systems at the Holiday Inn Crown Plaza and the Fairmont Hotel, both in San Francisco, California. In February 1993, David Bankers evaluated an OCV system at Chicago O'Hare, Chicago, Illinois and in June 1994, David Bankers evaluated an OCV system at the Downtown Hilton in Minneapolis, Minnesota.

On August 29–30, 1995, Plaintiff deposed David Bankers, a representative of LodgeNet. (Def. Mot. p. 4; Pl. Opp. p. 3; Decl. R. Doyle, p. 2). At the deposition, Defendant's counsel produced documents, specifically

Jimmy Salas' notes of competitive review conducted in January 1990 of Plaintiff's system, Def. Mot. p. 4; Pl. Mot. p. 3; Decl. R. Doyle, p. 2, and three memorandum regarding competitive reviews conducted in March 1992 by David Bankers and others in the San Francisco area. (Def. Mot. p. 5; Pl. Opp. p. 3). Additionally, Plaintiff's counsel learned of two videotapes which covered the January 1990 and March 1992 competitive reviews. (Pl. Opp. p. 3; Decl. R. Doyle, p. 2).

On August 30, 1995, Defendant's counsel produced to Plaintiff's counsel a videotape illustrating the competitive review conducted by Jimmy Salas and Casey Flynn on January 10, 1995, at the Stanford Park Hotel. (Def. Mot. p. 4; Pl. Opp. p. 3; Decl. R. Doyle p. 2).

On August 31, 1995, David Bankers was further deposed. (Def. Mot. p. 4; Pl. Opp.3; Decl. R. Doyle, p. 2). At the deposition, Plaintiff's counsel stated that the videotape produced on August 30, 1995, appeared incomplete, and requested a complete copy. (Def. Mot. p. 4; Pl. Opp. p. 3; Decl. R. Doyle, p. 2). Additionally, Plaintiff's counsel requested a copy of the March 1992 competitive review videotapes. (Pl. Opp. p. 3; Decl. R. Doyle, p. 2).

On September 11, 1995, the parties filed the Joint Case Management Statement. (Def. Mot. p. 7; Pl. Opp. p. 2). Paragraph A(6) states that "[A]dditional claims that a party intends to add are listed below: Additional claims will be added by January 1, 1996." (Def. Mot. p. 7; Decl. D. Fairbairn, Ex. Q, p. 5; Pl. Opp. p. 2).

On September 21, 1995, Defendant produced to Plaintiff a new videotape of the January 10, 1990 competitive review and the videotape of the March 1992 competitive review. (Def. Mot. p. 4 & 5; Pl. Opp. p. 3; Decl. R. Doyle, p. 2–3 & Ex. 1 & 2).

On September 25, 1995, the District Court granted the Joint Case Management Conference Order, drafted and signed by the parties. (Court Docket, Item # 56).

On November 9–10, 1995, Plaintiff deposed Steven Truckenmiller, a LodgeNet employee. (Def. Mot. p. 5; Pl. Opp. p. 4).

On November 14, 1995, Plaintiff deposed Jimmy Salas, a former LodgeNet employee. (Def. Mot. p. 5; Pl. Opp. p. 3; Decl. R. Doyle, p. 3).

On February 27, 1996, Plaintiff filed a complaint against Defendant in the San Francisco Superior Court which alleged Defendant's misappropriation of Plaintiff's trade secrets in January 1990, in violation of California Civil Code § 3426, *et seq.* and the tortious interference of Plaintiff's business relationships with the Sheraton Hotel Corporation in 1990 through 1992. (Def. Mot. p. 7; Decl. D. Fairbairn, Ex. R; Pl. Opp. p. 4; Decl. R. Doyle, p. 3).

## REPORT

### I. Defendant's Motion to Enforce the Federal Protective Order.

#### A. *Defendant's Arguments.*

Defendant moves the Court to find that (1) Plaintiff's state court action violates the federal protective order, granted by the District Court on June 8, 1995; (2) Plaintiff should be sanctioned for said violation; (3) Plaintiff's state action should be enjoined; (4) Plaintiff should be ordered to move the District Court for leave to amend the complaint or to exercise supplemental jurisdiction over the state claim; and, (5) Plaintiff should be assessed attorney's fees and costs for Defendant's services and expenditures in filing and litigating this motion.

i. *Plaintiff's state court action is premised on confidential information subject to the federal protective order.*

Defendant asserts that Plaintiff's state court action is premised on clearly confidential information obtained by Plaintiff during the course of this federal action. (Def. Mot. pp. 3–6; Decl. D. Fairbairn, p. 9). Defendant proffers Plaintiff's state court complaint in support of this assertion, stating that the pleadings therein expressly refer to the January 1990 and March 1992 competitive reviews conducted by LodgeNet on OCV's system as the wrongful acts on which the state court action is based. (Def. Mot. pp. 7–8; Decl. D. Fairbairn, p. 9 & Ex. R).

Specifically, Defendant states that in Paragraph 9 of the state court complaint, Plaintiff "[specifies] the acts of January 1990 in the County of San Mateo, and March 1992 in the City and County of San Francisco, as the wrongful acts giving rise to the new lawsuit," and "[identifies] Jimmy Salas as disclosing the above wrongful acts." (Def. Mot. p. 8; Decl. D. Fairbairn, Ex. R). In Paragraph 22 of the state court complaint, Plaintiff identifies the above as the wrongful acts giving rise to the second claim of the state court lawsuit and identifies Jimmy Salas as the source of disclosure for such acts. (Def. Mot. p. 8; Decl. D. Fairbairn, Ex. R). In Paragraph 36 of the state court complaint, Plaintiff identifies the above as the wrongful acts giving rise to the third claim of the state court lawsuit and identifies Jimmy Salas as the source of disclosure for such acts. (Def. Mot. p. 8; Decl. D. Fairbairn, Ex. R).

And, in Paragraphs 18, 33, and 44 of the state court complaint, Plaintiff expressly admits that the basis of the state court lawsuit was discovered during the course of the instant federal action while Plaintiff prepared its analysis of the issues presented and that the wrongful acts discovered are confidential. (Def. Mot. p. 8; Decl. D. Fairbairn, Ex. R). Moreover, Plaintiff admits that prior to the federal lawsuit, Plaintiff did not know, nor had reason to know, that Defendant's wrongful acts were the reason Plaintiff lost the Sheraton Hotel contracts which were subsequently obtained by Defendant. (Def. Mot. p. 8; Decl. D. Fairbairn, Ex. R).

Additionally, Defendant proffers the Declaration of David Fairbairn and attached exhibits as evidence that the confidential information was obtained through the course of the federal litigation.

(1) Defendant's response to Interrogatory No. 3 of Defendant's Response to Plaintiff's First Amended Set of Interrogatories, (Ex. B);

(2) the depositions of David Bankers, (Ex. C, D, E, & F), Steven Truckenmiller, (Ex. I & J), and Jimmy Salas, (Ex. K), in which Plaintiff asked extensive and specific questions regarding the January 1990 competitive reviews and the participation of Jimmy Salas and Casey

Flynn, the March 1992 competitive reviews, the notes taken by Jimmy Salas of the competitive reviews, the videotapes of the competitive reviews; the confidential memorandum regarding the March 1992 competitive reviews and Defendant's acquisition strategy, bid, and negotiations of the ITT Sheraton Hotel Corporation contracts,

(3) Jimmy Salas' handwritten notes made during the January 1990 competitive review, (Ex. G);

(4) the videotape of the January 1990 competitive review conducted by Jimmy Salas and Casey Flynn, (Ex. H);

(5) the three memorandum pertaining to the March 1992 competitive review, (Ex. L);

(6) the videotape of the March 1992 competitive review, (Ex. M);

(7) LodgeNet's proposal for the Sheraton Hotels of Hawaii, (Ex. N);

(8) David Banker's notes regarding a meeting with Sheraton Hotels, (Ex. O);

(9) LodgeNet's letter to ITT Sheraton Corporation regarding the proposed configuration of LodgeNet's system, (Ex. P).

Defendant contends that the information Plaintiff obtained and discovered during the course of this litigation, and on which Plaintiff's state court lawsuit is premised, is confidential and subject to the Protective Order granted by the District Court. (Def.Mot. p. 1, pp. 7–8, p. 11). Defendant proffers that all of the above exhibits were marked "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER." (Decl.D.Fairbairn, pp. 3–7). Defendant also contends that the statement of Plaintiff's counsel during the November 14, 1995 deposition of Jimmy Salas fully evidences Plaintiff's understanding that the marked documents and information surrounding Defendant's investigation of Plaintiff's system was confidential and subject to the Protective Order:

Everything that's being said here is confidential, it's subject to a confidentiality order ... you shouldn't discuss [any] of the things that you see here or that I'm going to show you, because they've been pro-

duced to us by LodgeNet on a confidential basis.

(Def. Mot. p. 6; Decl. D. Fairbairn, p. 7 & Ex. K).

Plaintiff's awareness of the confidentiality of the discovered information and the Protective Order's application is further shown by the Declaration of Luke Ellis, Plaintiff's counsel, filed by Plaintiff in opposition to Defendant's October 1995 motion for partial summary judgment. (Def. Mot. p. 6; Decl. D. Fairbairn, pp. 7–8). Attached as exhibits to the Declaration of Luke Ellis was a sketch made by Jimmy Salas, handwritten notes of Jimmy Salas, a report from David Bankers to Defendant's executive committee; excerpts from the August 29, 1995 deposition of David Bankers; and the videotape produced by Defendant's of the January 1990 competitive review. (Def. Mot. p. 6; Decl. D. Fairbairn, pp. 7–8). Defendant states that all of the exhibits were marked "Confidential." (Def. Mot. p. 6; Decl. D. Fairbairn, pp. 7–8). Furthermore, Luke Ellis filed the Declaration under seal with a cover page that stated "CONTAINS CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER." (Def. Mot. p. 6; Decl. D. Fairbairn, pp. 7–8).

ii. *The purpose of the federal Protective Order is to limit the use of confidential information and not merely to prohibit disclosure or use of competitive information.*

Defendant asserts that the purpose the Protective Order is set forth in Paragraph 11, which states that confidential information "shall not be used by the other party for any purpose other than in connection with preparation of the parties' analysis of issues presented in this litigation." (Def.Mot. P. 11). As Plaintiff used confidential information to file its state court action, Defendant argues that Plaintiff has violated the express terms and purpose of the Protective Order. (Def.Mot. p. 11).

Defendant disputes Plaintiff's assertion that the purpose of the Protective Order is only to prevent the disclosure of confidential information or the competitive use of confi-

dential information [1]. (Def.Reply, p. 3). Defendant states it was Plaintiff who drafted the initial protective order in which Paragraph 11 stated:

[a]ny information designated as Confidential Information shall not be used by the other party for any purpose other than in connection with this litigation.

(Def. Reply, p. 3 & Ex. A, p. 5).

*More importantly, it was Plaintiff who later revised the Protective Order to further restrict the use of confidential information to the parties' "preparation of the analysis of issues presented in this litigation."* (Def.Reply, p. 3).[2] Plaintiff did not propose limiting the use of confidential information to prevent the competitive use of confidential information. (Def.Reply, p. 3). Hence, both Plaintiff and Defendant "exhibited unequivocal intent to limit the use of confidential information to the preparation of issues in this action." (Def.Reply, p. 3). Given Plaintiff's initial draft and subsequent revisions, Plaintiff should not be allowed to rewrite the meaning of the Protective Order. (Def.Reply, p. 3).

iii. *Plaintiff may not avail itself of the defense of substantial compliance.*

Defendant requests that the Protective Order be strictly enforced and that the Court sanction and/or hold Plaintiff in civil contempt for this violation, pursuant to Federal Rule of Civil Procedure 37(b)(2). (Def.Mot. p. 1, p. 10). Defendant maintains that Plaintiff may not avail itself of the defense of substantial compliance against the Court's finding of contempt, and cites *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885 (9th Cir.1982), as authority that the substantial compliance defense only applies when an order is ambiguous. (Def. Mot. p. 12 & n. 2). Here, the Protective Order is not ambiguous. (Def.Mot. p. 12). Rather, a "literal reading of the protective order clearly defines what acts are prohibited; the prohibitions have been agreed to by both parties; and both parties are on notice of what the prohibitions are." (Def.Mot. p. 13).

Moreover, Defendant distinguishes the Protective Order from *In re Dual–Deck Video Cassette Antitrust Litigation, Go–Video, Inc. v. The Motion Picture Ass'n of Am. et al.,*[3] 10 F.3d 693 (9th Cir.1993), where the court found the protective order at issue to be clearly overly broad. (Def.Mot. p. 12). Here, the "prohibition on use of information is strictly limited to 'Confidential Information,' as opposed to 'all information' produced in discovery." (Def.Mot. p. 12).

Lastly, Defendant claims that even if the substantial compliance defense was available, Plaintiff cannot claim that it has substantially complied with the Protective Order. Both *Go–Video* and *Vertex* require that Plaintiff (1) base its actions on a good faith and reasonable interpretation of the District Court's order, and (2) make every reasonable effort to comply with the Protective Order. (Def. Mot. p. 13, Def. Reply p. 2).

Here, Plaintiff made no attempt to comply with the order. (Def.Mot. p. 13). Pursuant to the Joint Case Management Statement, the deadline for amendments to this federal complaint, January 1, 1996, expired prior to Plaintiff's commencement of the state court action. Plaintiff did not attempt to amend its federal complaint to include the state court allegations.[4] (Def.Mot. p. 13). And, while Plaintiff's state court complaint states that the alleged wrongful acts are not described with particularity in order to protect the

---

1. The Court notes that Defendant misstates Plaintiff's asserted understanding of the Protective Order. Plaintiff claims that the purpose of the Protective Order is to prevent the disclosure of confidential proprietary or product information for competitive use or gain. See discussion *supra.*

2. Exhibit B of the Declaration of David Fairbairn, attached to Defendant's Reply, is Plaintiff's revisions to the initial draft of the Protective Order. The Court notes that Exhibit B does not include the revised Paragraph 11. The Court accepts Defendant's assertion based on Defendant's reply and the Declaration of David Fairbairn.

3. As both parties' moving papers refer to the case as *Go–Video,* the Court's Report uses this abbreviation.

4. Defendant asserts that Plaintiff has refused Defendant's request that Plaintiff move the District Court for leave to amend their pleadings. (Def. Mot. pp. 9–10, p. 13; Decl. D. Fairbairn, p. 11).

confidentiality claims of both parties, such remedial action does not constitute a "reasonable effort to comply." (Def.Mot. P. 13). The violation is the filing of the state action itself. (Def. Mot. p. 13 ). Finally, Plaintiff did not seek to amend the Protective Order to allow its use of the confidential information, Def. Mot. p. 13, nor did Plaintiff move the District Court to clarify the Protective Order. (Def.Reply, p. 5). Given Plaintiff's inaction, Defendant argues that Plaintiff has not taken *any steps* to comply with the Protective Order, and therefore has not demonstrated substantial compliance. (Def. Mot. p. 13; Def. Reply, pp. 4–5).

### B. *Plaintiff's Arguments.*

**i.** *Plaintiff's state court action is premised on confidential information subject to the federal Protective Order.*

Plaintiff does not dispute that the state court action is premised on information obtained through the course of discovery during this federal action and subject to the Protective Order. (Pl.Opp. pp. 2–3, p. 6).

**ii.** *The purpose of the federal Protective Order is to prohibit disclosure or use of competitive information.*

Rather, Plaintiff asserts that the purpose of the protective order is to "protect the [privacy] proprietary commercial information," not to immunize Defendant from subsequently discovered illegal conduct, nor to limit the forum of subsequent litigation to federal jurisdiction. (Pl.Opp. p. 6). Plaintiff cites as authority Federal Rule of Civil Procedure 26(c)(7), which permits a court to order "that a trade secret or other confidential information ... not be revealed or be revealed only in a designated way." (Pl.Opp. p. 6). As such, Plaintiff has not disclosed any proprietary or product information, nor does Defendant "allege [Plaintiff] used 'confidential information' for competitive gain, or that [Plaintiff] permitted others to use it competitively." (Pl.Opp. p. 9). More impor-

tantly, the information which Defendant asserts was wrongfully disclosed does not relate to competitively useful proprietary or product information. (Pl.Opp. p. 9). Hence, Plaintiff has not revealed any trade secrets. (Pl.Opp. p. 9).

Moreover, Plaintiff asserts it went to great lengths to prevent the specific disclosure of Defendant's wrongful acts. (Pl.Opp. p. 10). Plaintiff attempted to file the state court action under seal and was subsequently prevented from doing so by the state court. (Pl. Opp. p. 10; Decl. R. Doyle, p. 4 & Ex. 3 & 4). Plaintiff removed all factual descriptions of Defendant's actions from the complaint. (Pl. Opp. p. 10; Decl. R. Doyle, p. 4 & Decl. D. Fairbairn, Ex. R). Plaintiff attempted to enter into a state protective order with Defendant.[5] (Pl. Opp. p. 10; Decl. R. Doyle, p. 4 & Ex. 5). Plaintiff also filed its response to Defendant's state court opposition under seal. (Pl. Opp. pp. 10–11; Decl. R. Doyle, p. 5 & Ex. 8). In contrast, Defendant's answer provided detailed factual disclosures, such as the fact and nature of the competitive reviews, the testimony given at the deposition of David Bankers, and the documents produced by Defendant. (Pl. Opp. p. 10; Decl. R. Doyle, p. 4 & Ex. 6 & 7). Thus, any factual disclosures resulting from the state court action can be attributed entirely to Defendant.

**iii.** *Plaintiffs actions, under Go Video, do not violate the protective order.*

Next, Plaintiff disputes Defendant's interpretation of *Go–Video.* The Ninth Circuit's holding did not rest on the "ambiguity" of the protective order. (Pl.Opp. p. 7). Defendant's conclusion is neither stated in the opinion, nor does Defendant proffer any citation from *Go–Video* as support. (Pl.Opp. p. 7). Rather, in *Go–Video,* the court had no difficulty construing the protective order as overly broad, and expressly recognized that any construction "[m]ust give effect to its legitimate purpose—protection from disclo-

**5.** The Court notes that Defendant's refusal to enter into a state protective order rests on the belief that such a stipulation impliedly consents to Plaintiff's alleged wrongful use of the confidential information, violates the Protective Or-

der, and renders Defendant a party to Plaintiff's disregard to the District Court's Order. (Def. Mot. p. 11 & n. 1; Decl. D. Fairbairn, Ex. S & U).

sure of commercial secrets, rather than immunity from suit." (Pl.Opp. p. 7).

Plaintiff argues that *Go–Video* is dispositive of the circumstances now before the Court.[6] (Pl.Opp. pp. 6–7). *Go–Video* provides that commencement of a new action based on information learned through discovery does not violate the protective order, nor does it constitute civil contempt. (Pl.Opp. p. 6).

*Go–Video* requires (1) a violation of the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, and (4) by clear and convincing evidence. (Pl. Opp. p. 5). As discussed above, Plaintiff has not disclosed proprietary or product information, and therefore, has not violated the purpose of the Protective Order. (Pl.Opp. p. 11). Plaintiff's actions were based on a reasonable and good faith interpretation of the Protective Order and case law. (Pl.Opp. p. 11). And, Defendant has not proffered clear and convincing evidence of any such disclosure and thus fails to meet the burden of proof. (Pl.Opp. pp. 5–7).

Additionally, Plaintiff asserts that neither *Go–Video,* nor any other case, mandates that Plaintiff should have amended, or attempted to amend, the federal complaint prior to filing the state court action. (Pl.Opp. p. 10). And, the Protective Order does not state that amendment is required. (Pl.Opp. p. 10).[7] Again, the purpose of the Protective Order is to prevent competitive uses of "confidential information." (Pl.Opp. p. 11). "Use of information gained thereunder to file suit in the only forum with non-discretionary jurisdiction to adjudicate such claims cannot violate the order." (Pl.Opp. p. 11). Hence, Plaintiff has no obligation to seek leave to amend the pleadings or the protective order. (Pl.Opp. p. 11).

### iv. *Plaintiff's choice of forum is appropriate.*

Finally, Plaintiff claims its state court action is appropriate because the California Superior Court is the only court with both in-personam jurisdiction and non-discretionary subject matter jurisdiction over Plaintiff's state action. (Pl.Opp. p. 11). Federal subject matter jurisdiction does not exist. (Pl. Opp. p. 11). Plaintiff's state action alleges violations of California's trade secret statute and seeks California tort remedies. (Pl.Opp. p. 11). Hence, no federal question is presented. (Pl.Opp. p. 11). Additionally, Plaintiff and Defendant are Delaware corporations. (Pl.Opp. p. 11). Hence, diversity does not exist for federal jurisdiction, pursuant to 28 U.S.C. § 1332(c). (Pl.Opp. p. 11).

Thus, the only basis for federal jurisdiction is supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a). (Pl.Opp. p. 12). Plaintiff argues that the District Court most likely would decline to exercise its power of supplemental jurisdiction, as there is no "common nucleus of operative facts"[8] existing between

6. This Court does not address Plaintiff's argument regarding Defendant's previous application of *Jepson, Inc., v. Makita Electric Works, Ltd.,* 143 F.R.D. 657, 664 (N.D.Ill.1992), as Defendant's present Motion does not reference this case. Additionally, this Court finds that *Jepson* is not controlling and only minimally persuasive of the issue at bar.

7. Plaintiff claims that Defendant has filed a patent infringement action against Plaintiff in South Dakota, and asserts that said action is based on information deemed confidential and subject to the Protective Order, which was disclosed by Plaintiff to Defendant regarding the operation and functions of Plaintiff's video switch. (Pl. Opp. p. 5, p. 10; Decl. R. Doyle, p, 6 & Ex. 11). If the Protective Order required such amendment to the pleadings, Defendant was also required to seek leave to amend its pleadings to include the South Dakota action as a counterclaim. (Pl.Opp. p. 10). Defendant contests that its South Dakota

action is premised on confidential information, but rather is based on information that was public knowledge. (Def.Reply, p. 7).

Review of the Protective Order shows that there is no provision which requires either party to amend the current federal pleadings prior to the commencement of a state court action based on allegedly wrongful acts discovered during discovery, including disclosed information deemed subject to the protective order. (Decl.D.Fairbairn, Ex. B). And, as a Motion to Enforce the Protective Order re Defendant's South Dakota action is not before the Court, and concerns Defendant's alleged violations of the Protective Order, rather than Plaintiff's, the Court finds this argument as irrelevant and confuses the issue at bar.

8. The Court dismisses Plaintiff's argument that Defendant's actions during the course of litigation demonstrates that the state and federal ac-

the state and federal actions. Pursuant to the *Uniform Trade Secrets Act,* California Civ.Code, §§ 3426, et seq., the elements of Plaintiff's state action claim for misappropriation of trade secrets are "(1) whether the property is a trade secret; (2) the misappropriation of that trade secret, (3) by a wrongful act, (4) resulting in damages to Plaintiff." (Pl.Opp. p. 12., p. 21). Plaintiff's state action claim for intentional and negligent interference with prospective economic advantage requires showing (1) that an economic relationship containing the probability of future economic benefit existed between Plaintiff and a third party, (2) Defendant's knowledge thereof, (3) an intentional or negligent acts by Defendant to disrupt that economic benefit, (4) that the relationship was actually disrupted, and (5) that Plaintiff was damaged. (Pl.Opp. p. 21).

In contrast, the elements of the federal patent infringement action are (1) the validity of the patent, (2) infringement, and (3) damages. (Pl.Opp. p. 20). And, the patent allegedly violated was issued on August 7, 1990, thus "tortious conduct occurring prior to August 7, 1990, is necessarily distinct from conduct constituting acts of patent infringement." (Pl.Opp. p. 20).

Additionally, the damages of the state and federal actions do not duplicate one another. (Pl.Opp. p. 21). In Plaintiff's state claim for misappropriation of trade secrets, damages commence January 10, 1990. (Pl.Opp. p. 21). In Plaintiff's state claim for interference with prospective economic advantage, damages commence in 1992 when Defendant allegedly acquired the Sheraton Hotel contracts. (Pl. Opp. p. 21). In Plaintiff's federal action for patent infringement, damages commence on November 22, 1994. (Pl.Opp. p. 21). Thus, Plaintiff seeks to recover damages in its state action for conduct and events occurring in 1990 through 1992, while in the federal action, Plaintiff's recovery of damages is after November 22, 1994. (Pl.Opp. p. 1).

Plaintiff argues that the District Court would decline to exercise supplemental jurisdiction of Plaintiff's state claim because of the novel or complex issues, pursuant to 28 U.S.C. § 1367(c).[9] (Pl.Opp. p. 12). And, Plaintiff asserts that combining the federal and state actions would have delayed the federal trial, significantly increased discovery, which was already extraordinary, and overwhelmed, confused and prejudiced the jury. (Pl.Opp. p. 13).

Finally, Plaintiff disputes that the parties agreed, via the Protective Order, to file subsequent legal actions in federal court. (Pl. Opp. p. 13). Moreover, the parties may not consent to federal jurisdiction where federal jurisdiction is not conferred.[10] (Pl.Opp. p. 13).

## C. The Protective Order's Requirements and Purpose.

Again, Plaintiff does not dispute that its state court action is premised on information obtained during the course of the federal action at bar and subject to the Protective

---

tion are separate and distinct from one another. (Pl.Opp. pp. 21–22). Plaintiff asserts that if the state and federal action were inseparable, Defendant was obligated to provide the documents, the competitive review videotapes, and other persons involved in Defendant's "competitive reviews," as part of its Rule 26 initial disclosures. (Pl.Opp. p. 21). Yet, Defendant did not readily disclose this information, thereby evidencing that the issues presented in the two actions are factually and legally distinct from one another. (Pl.Opp. p. 21). It is unclear to this Court as to why Defendant was obligated to present this information in the exchange of Rule 26 disclosures when Plaintiff's state law claims were not presented in the federal action. Hence, the Court dismisses this argument.

9. The Court dismisses Plaintiff's argument that Defendant could have removed the state court

action, pursuant to 28 U.S.C. § 1446(b), as erroneous. (See Pl. Opp. p. 12). § 1441(a) provides that a state court civil action "of which the district courts of the United States have original jurisdiction," may be removed by the defendant to the district court and division embracing the place where such action is pending. Yet, Plaintiff argues that the District Court lacks original jurisdiction because its state claim does not present a federal question, nor does diversity exist. (Pl.Opp. p. 11). Accordingly, based on Plaintiff's own assertions, Defendants may not remove the state action to federal court.

10. While this may be the practical effect of Defendant's claim, Defendant does not make this argument. Accordingly, the Court deems Plaintiff's assertion irrelevant.

Order. Accordingly, this Court examines the Protective Order's provisions and purpose to determine whether Plaintiff's use of the confidential information violates, either expressly or impliedly, the Protective Order.

This Court's review of the Protective Order demonstrates that:

(1) there is no express provision which states that a subsequent action, which is based on protected confidential information, is subject to federal jurisdiction, (See Decl. D. Fairbairn, Ex. A);

(2) there is no express provision which states that the filing of a subsequent action, which is based on protected confidential information, violates the Protective Order, (See Decl. D. Fairbairn, Ex. A);

(3) there is no express provision which states that prior to filing a subsequent action, which is based on protected confidential information, a party must seek leave to amend the federal pleadings, (See Decl. D. Fairbairn, Ex. A);

(4) there is no express provision which states that prior to filing a subsequent action, which is based on protected confidential information, a party must amend, or attempt to amend, the Protective Order, (See.Decl.D.Fairbairn, Ex. A), and;

(5) there is no express provision which states that the filing of a subsequent lawsuit based on protected confidential information without prior amendment, or attempt to amend, the pleadings or the Protective Order, violates the Protective Order, (See Decl. D. Fairbairn, Ex. A).

Given the absence of any express provision which states Defendant's position, this Court must infer whether Plaintiff's use of the confidential information to file the state action violates the Protective Order. Thus, the Court must determine the intended purpose of the Protective Order in order to determine whether Plaintiff's actions impliedly violate the parties' agreement. *See Go–Video,* 10 F.3d at 695 ("For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose.").

Review of the Protective Order demonstrates that there is no express provision by which the parties state their intended purpose for entering into the agreement. *See Go–Video,* 10 F.3d at 695.[11] Hence, the Court must attempt to discern the parties' intended purpose of the Protective Order by its language and the evidence proffered by the parties.[12]

Paragraph 11 of The Protective Order states:

Any information designated as Confidential Information shall not be used by the other party for any purpose other than in connection with preparation of the parties analysis of issues presented in this litigation.

(Decl.D.Fairbairn, Ex. A, p. 5).

Paragraph I of the Protective Order defines Confidential Information as:

[a]ny type of information which is designated pursuant to this Protective Order as confidential by the supplying party, whether it be a document, an object, information contained in a document, information revealed in a deposition, information revealed in an interrogatory answer or other form of evidence or discovery, formal or informal.

(Decl.D.Fairbairn, Ex. A, p. 2).

Paragraph 9 of the Protective Order determines the method by which Confidential Information is designated.[13]

---

**11.** In *Go–Video,* the protective order expressly stated that the agreement was "designed to protect commercial secrets." *Go–Video,* 10 F.3d at 695 & n. 1 & n. 2.

**12.** This Court's statutory and case law research failed to yield authority as to the standards for the interpretation of the Protective Order. Accordingly, the Court will first look to the language of the Protective Order itself. If the language of the Protective Order is not dispositive, the Court will consider extrinsic evidence to determine its meaning, subject to the limitation that any construction is reasonable.

**13.** Paragraph 9(a) of the Protective Order provides that "Confidential Information" shall be marked, prior to production, as "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" or

Paragraph 10 of The Protective Order states that "[i]n designating information as Confidential Information, the supplying party will make such designation only as to that information which it in good faith believes to be confidential." (Decl.D.Fairbairn, Ex. A, p. 5).

Defendant argues that the purpose of the protective order is expressly stated in Paragraph 11: To limit the parties' use of confidential information to "the preparation of the parties' analysis of issues presented in this litigation." (Def.Mot. p. 12). "[A] literal reading of the protective order clearly defines what acts are prohibited; the prohibitions have been agreed to by both parties; and both parties are on notice of what the prohibitions are." (Def.Mot. p. 13). Defendant proffers Plaintiff's initial draft of the Protective Order and subsequent revisions to demonstrate that *both parties* understood this to be the purpose of the Protective Order. (Def. Reply, p. 3 & Decl. D. Fairbairn, Ex. A & B).

The Court finds that Defendant's argument and evidence are not dispositive of the Protective Order's purpose. Both the initial draft and the current language of Paragraph 11 merely state the use of the confidential information exchanged, yet fail to show on their face the parties' purpose for entering

into the agreement. The Court opines that this is an important factual distinction, given that knowledge of the parties' purpose for entering into the agreement is necessary to determine whether Plaintiff's action impliedly violated the Protective Order. *See Go-Video*, 10 F.3d at 695 ("For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose.").

And, contrary to Defendant's assertion, neither the initial draft, nor the current language of Paragraph 11 expressly or impliedly state the specific acts which are prohibited, the specific prohibitions agreed to by the parties, or the specific prohibitions of which the parties had notice. Here, Defendant demonstrates to this Court the vagueness of Paragraph 11, rather than the purpose of the protective order.[14] Accordingly, this Court finds that Defendant fails to establish the purpose of the Protective Order.

Plaintiff argues that the purpose of the protective order is to prevent the disclosure of confidential proprietary or product information from competitive use or gain, citing Federal Rule of Civil Procedure 26(c)(7) which grants the court the authority to order a protective order for this purpose.

---

an equivalent designation. (Decl.D.Fairbairn, Ex. A, p. 4).

Paragraph 9(b) of the Protective Order provides that "[a]ll copies of documents provided to the opposing party and all copies made by the receiving party, which are subject to the Protective Order, shall be marked as "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" or an equivalent designation." (Decl.D.Fairbairn, Ex. A, p. 4).

Paragraph 9(c) of the Protective Order provides that "depositions, suppliers and other interested persons have the right to designate testimony as "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" stating on the record, in person or through counsel, that such designation is made." (Decl.D.Fairbairn, Ex. A, pp. 5–6).

Paragraph 9(d) of the Protective Order provides that "tangible objects which are provided to the opposing party shall be designated Confidential Informational by affixing to the object or its container a label or tag marked "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" or

an equivalent designation. (Decl.D.Fairbairn, Ex. A, p. 5).

14. The Court finds that a strict and literal interpretation of Paragraph 11 is overly restrictive. Paragraph 11 limits the use of Confidential Information to the "preparation of the parties' analysis of issues presented in this litigation." The Court notes that the use of the term "presented" arguably restricts "the issues in this litigation" to only those claims pled by the parties at the time the Protective Order was executed on June 2, 1995, and thereafter approved by the District Court on June 5, 1995. Paragraph 11 does not state "issues presented, or issues arising during the course of this litigation," nor does the Protective Order expressly require the amendment of the federal pleadings. Hence, contrary to Defendant's argument, if the Court were to strictly construe the language of Paragraph 11, neither party may seek leave to amend the federal pleadings to state a new claim or counterclaim, based on the disclosure of confidential information of alledged wrongful acts, because the parties are restricted to the pleadings as of June 2, 1995. A strict and literal interpretation of Paragraph 11, in effect, limits the claims of the parties, and

Review of the Protective Order shows that there is no express provision which states that the purpose of the Protective Order is to prevent the disclosure of confidential product or proprietary information for competitive use or gain. (See Decl. D. Fairbairn, Ex. A). And while Rule 26(c)(7) does authorize the court's issuance of a protective order for the protection of trade secrets, said rule does not by itself demonstrate that this was the parties' purpose for entering into the Protective Order. Nor does it demonstrate that this was the District Court's basis for granting the Protective Order.[15] Hence, Plaintiff's position is conclusory and unsupported.

Accordingly, Plaintiff fails to establish the purpose of the Protective Order.

This Court has extensively reviewed the parties' moving papers, declarations, and the proffered evidence, yet cannot determine the parties' purpose for entering into the Protective Order. The Protective Order fails to expressly state Defendant's position. It fails to expressly state the parties' purpose for entering into the agreement. And, both parties fail to establish the purpose of the protective order. Thus, there is no basis on which this Court may render a reasonable, factual determination of the parties' intended purpose of the Protective Order.[16]

### E. *The Court's Findings of Facts.*

Based on review of Plaintiff's and Defendant's arguments, declarations and proffered evidence, this Court makes the following findings of facts:

1. Plaintiff learned of the January 1990 and March 1992 competitive reviews or evaluations performed by Jimmy Salas, a former employee of Defendant, and other personnel, through Defendant's response to Plaintiff's Interrogatory No. 3. (Def. Mot. p. 4 & 5; Pl. Opp. p. 2; Decl. R. Doyle, p. 2). This response served as a general reference to information on which Plaintiff formed the basis of the state court lawsuit. (Def. Mot. p. 4 & 5; Pl. Opp. p. 2; Decl. R. Doyle, p. 2).

2. Pursuant to Paragraph 9(d) of the Protective Order, Defendant's response to Plaintiff's Interrogatory No. 3 was marked confidential and subject to the Protective Order;

3. Pursuant to Paragraph 9(c) of the Protective Order, the Deposition of David Bankers, and the testimony rendered therein, was deemed confidential and subject to the Protective Order;

4. Pursuant to Paragraph 9(b) of the Protective Order, Jimmy Salas's notes of the January 1990 competitive review conducted on Plaintiff's system, designated as D053545–48, were marked confidential and subject to the Protective Order;

5. Pursuant to Paragraph 9(b) of the Protective Order, David Bankers' three memorandum of the March 1992 competitive reviews conducted on Plaintiff's system, designated as D053528–D053544,

thereby constitutes an unlawful immunity from suit.

**15.** Federal Rule of Civil Procedure 26(c) provides, in relevant part:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred ..., and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) that the disclosure or discovery not be had;
(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
(5) that discovery be conducted with no one present except persons designated by the court;
(6) that a deposition, after being sealed, be opened only by order of the court;
(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way and
(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

**16.** The Court distinguishes the parties' subjective, individual interpretation of the Protective Order's purpose from the objective, mutually agreed upon intended purpose of the Protective Agreement.

were marked confidential and subject to the Protective Order;

6. Pursuant to 9(d) of the Protective Order, the videotape of the January 1990 competitive review on Plaintiff's system, designated as D058682, was marked confidential and subject to the Protective Order;

7. Pursuant to 9(d) of the Protective Order, the videotape of the March 1992 competitive reviews conducted by Defendant on Plaintiff's systems, designated D058683, was marked confidential and subject to the Protective Order;

8. Pursuant to Paragraph 9(c) of the Protective Order, the Deposition of Steven Truckenmiller, and the testimony rendered therein, was deemed confidential and subject to the Protective Order;

9. Pursuant to Paragraph 9(c) of the Protective Order, the Deposition of Jimmy Salas, and the testimony rendered therein, was deemed confidential and subject to the Protective Order;

10. Pursuant to Paragraph 9(b) of the Protective Order, the Sheraton Hotels of Hawaii proposal was marked confidential and subject to the Protective Order;

11. Pursuant to Paragraph 9(b) of the Protective Order, David Bankers' notes of a meeting with the Sheraton Hotels, were marked confidential and subject to the Protective Order;

12. Pursuant to Paragraph 9(b) of the Protective Order, LodgeNet's letter to ITT Sheraton Corporation regarding the proposed configuration of LodgeNet's system, was marked confidential and subject to the Protective Order;

13. Plaintiff's state court action is premised on the above confidential information, all of which is subject to the Protective Order;

14. The Protective Order does not expressly state that the parties' subsequent litigation was subject to federal jurisdiction;

15. The Protective Order does not expressly state that the filing of a subsequent action, based on protected confidential information, violates the Protective Order;

16. The Protective Order does not expressly state that prior to filing the state action, Plaintiff was required to seek leave to amend the federal pleadings;

17. The Protective Order does not expressly state that prior to filing the state action, Plaintiff was required to amend the Protective Order;

16. The Protective Order does not expressly state the parties' intended purpose for entering into the Protective Order.

17. The Protective Order does not expressly state that the parties' intended purpose for entering into the Protective Order is to prevent the disclosure of confidential proprietary or product information for competitive gain or use.

## F. Whether Plaintiff Should Be Held In Civil Contempt.

Contrary to Defendant's argument, *Go–Video* sets forth the standards for civil contempt. *See Go–Video*, 10 F.3d at 695; *Religious Technology Center v. Netcom On–Line Communication Services*, 923 F.Supp. 1231 (N.D.Cal.1995), and therefore applies to the circumstances at bar.

"Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go–Video*, 10 F.3d at 695; *Religious Technology*, 923 F.Supp. at 1259. "The contempt 'need not be willful,' and there is no good faith exception to the requirement of disobedience to a court order." *Go–Video*, 10 F.3d at 695; *Religious Technology*, 923 F.Supp. at 1259. "But a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].' " *Go–Video*, 10 F.3d at 695; *Religious Technology*, 923 F.Supp. at 1259.

"Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by "a few technical violations" where every reasonable effort has been made to "comply." *Go–Video*, 10 F.3d at 695; *Religious Technology*, 923 F.Supp. at 1259.

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of evidence...." *Go–Video,* 10 F.3d at 695; *Religious Technology,* 923 F.Supp. at 1259.

"The court must properly determine (1) that plaintiff violated the court order, (2) beyond substantial compliance, (3) not a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Go–Video,* 10 F.3d at 695; *Religious Technology,* 923 F.Supp. at 1259.

### i. Whether Plaintiff violated the Protective Order.

This Court finds that Defendant has failed to demonstrate by clear and convincing evidence that Plaintiff's state court action, which is based on protected confidential information, violates the Protective Order. First, Defendant has failed to show that Plaintiff's filing of the state action violates an express provision of the Protective Order. Second, Defendant has failed to show that Plaintiff's failure to amend the Protective Order or to seek leave to amend the federal pleadings, prior to filing the state action, violates an express provision of the Protective Order. Third, Defendant has failed to establish the express or implied purpose of the Protective Order, and thus, this Court cannot find that Plaintiff's filing of the state action impliedly violates the Protective Order. *See Go–Video,* 10 F.3d at 695.[17]

Accordingly, this Court finds that Defendant has not met its burden of proof. Alternatively, this Court finds that Plaintiff's state action is a harmless technical violation for the reasons set forth below.

### ii. Whether Plaintiff's interpretation is not in good faith and reasonable.

Defendant argues that Plaintiff lacks a good faith and reasonable interpretation of the Protective Order, given that Plaintiff drafted the initial Protective Order and made the subsequent revision to Paragraph 11 which was subsequently agreed to by Defendant. Plaintiff did not state in the initial draft and revisions Plaintiff's understanding of the purpose of the Protective Order.

The Court finds Defendant's argument unpersuasive. As stated earlier, Defendant only establishes that the parties agreed to the stated use of the confidential information, yet fails to negate Plaintiff's asserted understanding of the Protective Order. Indeed, Defendant does not proffer evidence that the parties understood Paragraph 11 to state both the usage of the confidential information and the parties' intended purpose of the Protective Order. Hence, this Court finds that Defendant fails to establish that Paragraph 11 is dispositive of the parties' intended purpose of the Protective Order.

Given Defendant's failure to establish the express or implied purpose of the Protective Order, this Court finds that Plaintiff's understanding of the purpose of the Protective Order, specifically to prevent the disclosure of confidential proprietary or product information from competitive use or gain, is plausible.[18]

Accordingly, the Court finds that Defendant has failed to demonstrate by clear and convincing evidence that Plaintiff's actions are not based on a good faith and reasonable interpretation of the Protective Order.

### iii. Whether Plaintiff's actions are beyond substantial compliance.

The Court finds that the availability of the substantial compliance defense is not prem-

---

**17.** In *Go–Video,* the protective order limited "any use whatsoever of information obtained in discovery except for preparation and trial of 'this action.'" *Go–Video,* 10 F.3d at 695. The Ninth Circuit expressly recognized "a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets." *Id.* Again, the protective order expressly stated this purpose. *Id.* In contrast, here the Protective Order does not state the parties purpose and Defendant has failed to establish it's objective. Thus, the Court cannot connect its prohibitions to its purpose, and thereby determine a violation.

**18.** Here, the Court notes that Defendant's interpretation of the Protective Order is equally plausible. The burden of proof, however, is on Defendant to establish by clear and convincing evidence that Plaintiff's interpretation is not in good faith or reasonable.

ised on a finding that a court order is "ambiguous." This Court finds that *Go–Video* sets forth the proper analysis for a finding of civil contempt based on a party's disobedience of a specific court order. *Go–Video,* 10 F.3d at 695; *Religious Technology,* 923 F.Supp. at 1259. As expressly stated in *Go–Video:*

> Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply.

*Go–Video,* 10 F.3d at 695. Thus, the Court finds that Plaintiff may avail itself of the defense of substantial compliance.

Defendant argues that Plaintiff has not taken *any* steps to substantially comply with the Protective Order. Defendant points to Plaintiff's failure to amend the Protective Order or seek leave to amend the federal pleadings prior to filing its state action. Alternatively, Defendant asserts that Plaintiff could have moved the District Court to clarify the purpose of the Protective Order.

This Court opines that in order to determine whether a party substantially complies with a court order, again the Court must review the parties' action in accordance with the purpose of the order. Here, Defendant fails to demonstrate the express or implied purpose of the Protective Order. More importantly, Defendant fails to show by clear and convincing evidence that Plaintiff's interpretation of the purpose of the Protective Order is not in good faith or reasonable.

Thus, given Plaintiff's interpretation of the Protective Order, this Court finds that Defendant fails to show by clear and convincing evidence that Plaintiff did not substantially comply with the Protective Order. The Protective Order does not expressly require amendment by Plaintiff of the federal pleadings or the Protective Order. Similarly, while Plaintiff could have moved the District Court for clarification of the Protective Order, Plaintiff decision not to do so does not violate the Protective Order. Moreover, these are not the only actions by which Plaintiff may demonstrate substantial compliance.

Here, Plaintiff attempted several times to file its state action under seal and thereby "went to great lengths to avoid revealing in the public filings anything it had learned in discovery." *Go–Video,* 10 F.3d at 695. Review of Plaintiff's state complaint does not disclose confidential proprietary or product information. Defendant does not dispute this. Nor does Defendant argue that Plaintiff has used confidential proprietary information for competitive use or gain. And, while Plaintiff's complaint does refer to "wrongful acts" engaged in on or about January 1990 and March 1992, and states the name Jimmy Salas, *said factual references do not disclose confidential proprietary or product information.* Indeed, this Court finds that Plaintiffs state complaint appears carefully crafted to conform with Plaintiff's interpretation of the Protective Order. Plaintiff also filed its Response to Defendant's Motion to Stay the Proceedings under seal in an attempt to limit the risk of disclosure of competitive proprietary or product information.

Accordingly, this Court finds that Defendant failed to demonstrate by clear and convincing evidence· that Plaintiff failed to substantially comply with the Protective Order. *See Go–Video,* 10 F.3d at 696.

Based on the aforementioned analysis, this Court finds that Plaintiff should not be held in civil contempt for filing its state action based on the confidential information obtained during the course of the federal action.

## II. Whether a Sanction and/or an Award of Attorney's Fees Should be Imposed.

"Under *[In re Crystal Palace Gambling Hall, Inc.,]* the award to defendants must be limited to their 'actual loss' for 'injuries which result from the noncompliance." *Go–Video,* 10 F.3d at 696 (citing *In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1363 (9th Cir.1987) (citations omitted)).

Defendant requests that each of Plaintiff's counsel be sanctioned $5,000 for violating the Protective Order and disrespecting the District Court. (Def.Mot. p. 17). Defendant fails to offer a basis on which this amount is derived. (Def.Mot. p. 17). Defendant also

requests that the Court fine Plaintiff in the amount of $1,000 per day for the continuing violation of the Protective Order, until Plaintiff withdraws the state action. (Def.Mot. pp. 17–18).

The Court declines to find that Plaintiff should be sanctioned. First, Defendant has not shown by clear and convincing evidence that (1) Plaintiff violated the Protective Order; or, (2) that under a good faith, reasonable interpretation of the Protective Order, Plaintiff failed to substantially comply with the Protective Order. Hence, the Court declines to find Plaintiff in civil contempt. And, Defendant does not claim an actual loss resulting from Plaintiff's actions, but rather seeks the award of sanctions and a fine for punitive reasons.

Accordingly, the Court finds that Plaintiff should neither be sanctioned, nor fined.

### III. Whether the Court Should Enjoin Plaintiff's State Action.

A. *Defendant's Argument,*

I. *The All Writs Act authorizes the enjoinment of the state action and the Anti–Injunction Act's Necessary in Aid of Jurisdiction Exception Applies to the Case at Bar.*

Defendant argues that the District Court should enjoin Plaintiff's state action, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), citing *Westinghouse Electric Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932 (9th Cir.1993) (citation omitted), because "an injunction is necessary to effectuate and prevent further frustration" of the Protective Order. (Def.Mot. p. 14). Defendant contends that the Anti–Injunction Act fails to prohibit the issuance of the injunction, as the "present case fall squarely within the 'necessary in aid of jurisdiction' exception to the Anti–Injunction Act." (Def.Mot. p. 14). An "injunction is necessary ... to enforce the Protective Order and thereby preserves the [District Court's] jurisdiction over the dispute." (Def.Mot. p. 15).[19]

Alternatively, Defendant argues that an injunction is necessary to protect the District Court's jurisdiction over the federal dispute because Plaintiff filed its trade secret action in a separate forum in order to "argue that its video distribution systems are protected by trade secret law without fear of having its patent invalidated due to insufficient disclosure," thereby circumventing federal patent laws. (Def. Mot. p. 15–6; Def. Reply, p. 6).

Here, Defendant claims that both the federal and state actions "involve the same subject matter, the same parties, the same facts, the same technology and integrally related legal issues." (Def.Mot. p. 15). Defendant points out that Plaintiff's state action alleges that its "on-demand video distribution system is protected by trade secrets," while in the federal action, Plaintiff seeks to "enforce its patent directed to the same on-demand video distribution systems." (Def.Mot. p. 15).

In order to defend the validity of the patent in dispute, Plaintiff must disclose in sufficient detail "how to make and use the invention," and "the best mode of carrying out the invention." (Def.Mot. p. 15). The patentee's duty to disclose, Defendant contends, directly conflicts with trade secret laws when information deemed a trade secret by the patentee is withheld from the patent as to how the invention was made, its use, or relating to the best mode of carrying out the invention. (Def.Mot. p. 16). By filing in separate forums, Defendant claims that Plaintiff "can argue its video distribution systems are protected by trade secret law without fear of having its patent invalidated due to insufficient disclosure." (Def.Mot. p. 16). Other than authority for the duty to disclose the invention's make, use and best mode of carrying out the invention, Defendant does not proffer authority for Plaintiff's use of the state action to circumvent the federal action. (Def.Mot. p. 15).

Finally, Defendant argues that the Anti–Injunction Act does not bar enjoinment of the state court action, as the Protective Order for all practical purposes is a federal injunction issued prior to the filing of Plain-

---

19. The Court notes that Defendant does not provide statutory nor case law to support the substantive arguments presented. (*See* Def. Mot. p. 15).

tiff's state court action.[20] (Def.Mot. p. 17). As such, Plaintiff was in effect enjoined from bringing a second lawsuit. (Def.Mot., p. 17). Defendant asserts that the Anti–Injunction Act does not apply to a federal injunction issued prior to the commencement of a state court action, citing *Dombrowski v. Pfister,* 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965). (Def.Mot., p. 17).

### B. *Plaintiff's Arguments.*

Plaintiff counters that Defendant presents an unsupported, conclusive argument which is not within the narrow confines of the "necessary in aid of jurisdiction" exception, relying on the Supreme Court's express rulings in *Atlantic Coast Line Railway Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 294–95, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970), and reiterated by the Ninth Circuit in

*Lou v. Belzberg,* 834 F.2d 730, 740 (9th Cir. 1987):

> 'Necessary in aid of' is similar to the concept of injunctions to 'protect or effectuate' judgments. Neither exception applies unless injunctive relief is necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. The mere existence of a parallel action in state court does not rise of the level of interference with federal jurisdiction necessary to permit relief under the 'necessary in aid of' exception.

(Pl.Opp. p. 15).

Here, Plaintiff disputes Defendant's claim that the factual and legal issues in the feder-al and state cases are the same, and asserts that the federal court lacks concurrent jurisdiction over its trade secret action. (Pl.Opp. p. 15). Notwithstanding these critical distinctions, Plaintiff asserts that even if its two actions involved the same legal issues, and the District Court had concurrent jurisdiction of the state action, *Lou* holds that "neither court may prevent the parties from simultaneously pursuing claims in both courts." (Pl.Opp. p. 15).

In further reliance on *Atlantic,* Plaintiff claims that its state action case neither interferes nor impairs the District Court's disposition or flexibility to decide the case. (Pl.Opp. pp. 16–17). And, as the Protective Order does not constitute a federal final judgment, nor has a final judgment been rendered in the case, its state action does not interfere with a federal judgment. (Pl.Opp. pp. 16–17). Moreover, Plaintiff argues that even if its state court action interfered with a federal right, or invaded an area preempted by federal law, *Atlantic* holds that either circumstance is not within the parameters of the "necessary in aid" exception, and the injunction is barred. (Pl.Opp. p. 17).

Furthermore, Plaintiff proffers *Vendo Company v. Lektro–Vend Corporation,* 433 U.S. 623, 625, 97 S.Ct. 2881, 2884–85, 53 L.Ed.2d 1009 (1977), to argue that when federal and state actions are *in personam actions,* as in the factual circumstances here, traditionally both are allowed to "proceed concurrently, without interference from either court, and an injunction to 'preserve' a case or controversy does not fit within the

**20.** The Court finds this argument unpersuasive, and notes that Defendant fails to proffer authority for the proposition that the district court's granting of the discovery protective order, pursuant to Federal Rule of Civil Procedure 26(c) is the equivalent of an injunction. This Court's research failed to yield case law authority for this legal conclusion. Indeed, the only case which tangentially related argues that a requested injunction was in effect a protective order. *See Del Mar Avionics, v. Quinton Instruments Co.,* 645 F.2d 832, 836 n. 4 (9th Cir.1981). The Ninth Circuit declined to rule on the issue. *Id.* More importantly, the District Court's issuance of the Protective Order fails to address the necessary elements of a preliminary injunction. A moving party is entitled to preliminary injunction if it establishes either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor. *See Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987); *California Cooler v. Loretto Winery,* 774 F.2d 1451, 1455 (9th Cir.1985). Here, review of the Protective Order and the record demonstrates that neither Defendant nor Plaintiff argued these issues before the District Court, nor did the District Court address them. Accordingly, the Court dismisses Defendant's argument.

'necessary in aid of its jurisdiction' exception." (Pl.Opp. pp. 18–19).

Finally, Plaintiff claims that the "necessary in aid of" its jurisdiction exception does not apply even in the context of issue preclusion, citing *Vernitron Corp. v. Benjamin,* 440 F.2d 105, 108 (2nd Cir.1971), or when a state action's issues overlap to a significant degree with the federal case, citing *Williams v. Balcor Pension Investors,* 1990 WL 160084, *3 (N.D.Ill.1990). (Pl.Opp. p. 18).

### C. Whether Plaintiff's State Action Should Be Enjoined.

The All Writs Act provides, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The Supreme Court has repeatedly recognized the power of a federal court to issue such commands under or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained. . . ." *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,* 992 F.2d 932, 937 (9th Cir.1993) (citations omitted).

 Despite the broad conferral of power, the All Writs Act is limited in its application. The Act itself is not an independent source of jurisdiction. *Westinghouse,* 992 F.2d at 937 (citation omitted). Rather, "[i]t may be invoked by a district court only in aid of jurisdiction which it already has." *Id.* (citation omitted). And, the All Writs Act may be appropriately confined by Congress. *See United States v. New York Tel. Co.,* 434 U.S. 159, 172–73, 98 S.Ct. 364, 372–73, 54 L.Ed.2d 376 (1977).

Here, the All Writs Act must be applied in conjunction with the Anti–Injunction Act, 28 U.S.C. § 2283.[21] The Anti–Injunction Act generally prohibits the federal courts from interfering with proceedings in the state courts:

A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

*Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 145–46, 108 S.Ct. 1684, 1688–89, 100 L.Ed.2d 127 (1988) (citing 28 U.S.C. § 2283).

"Congress, however, has permitted injunctions in certain specific circumstances, namely, when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment." *Chick,* 486 U.S. at 146, 108 S.Ct. at 1689. "These exception are designed to ensure the effectiveness and supremacy of federal law." *Id.* "But as [recognized by the Supreme] Court, the exceptions are narrow and are 'not to be enlarged by loose statutory construction." *Id.* (citation omitted); *See also Lou v. Belzberg,* 834 F.2d 730, 739 (1987) (exceptions must be construed narrowly). "Any doubts about the appropriateness of enjoining state court proceedings under the Anti–Injunction Act should be resolved in favor of permitting state courts to proceed." *Lou,* 834 F.2d at 739 (citing *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); *Bechtel Petroleum, Inc. v. Webster,* 796 F.2d 252, 253 (9th Cir.1986) (citation omitted)).

 "Unless one of the statutory exceptions applies, a federal injunction restraining prosecution of a law suit in state court is *absolutely prohibited.*" *Lou,* 834 F.2d at 740. (citations omitted) (emphasis added). "A federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atlantic,* 398 U.S. at 294, 90 S.Ct. at 1747. "This rule applies regardless of whether the federal court itself has jurisdiction over the controversy, or whether it is ousted from juris-

---

**21.** This Court's research failed to yield Ninth Circuit case law which states this conclusion. Nonetheless, the Court finds persuasive *Castano v. American Tobacco Co.,* 879 F.Supp. 594, 597 (E.D.La.1995) (citing *Cinel v. Connick,* 792 F.Supp. 492, 496 (E.D.La.1992)); *Henson v. Hoth,* 258 F.Supp. 33, 35 (D.Col.1966).

**942**

diction for the same reason that the state court is." *Id.*

And, "[t]he fact that an injunction may be issued under an exception to the Anti–Injunction Act does not mean that it must issue." *Blalock Eddy Ranch v. MCI Telecommunications Corp.*, 982 F.2d 371, 375 (9th Cir.1992) (citing Chick, 486 U.S. at 151, 108 S.Ct. at 1692). Rather, "[t]he decision to grant an injunction that does not violate the Anti–Injunction Act, therefore, *is committed to the discretion of the district court.*" *Blalock*, 982 F.2d at 375 (citations omitted); *Bechtel*, 796 F.2d at 253.

 "A district court abuses its discretion when it rests its conclusions on clearly erroneous factual findings or on incorrect legal standards." *Blalock*, 982 F.2d at 375. "However, whether an injunction may issue under the Act is a question of law reviewed de novo." *Id.*

With the above principles in mind, this Court now turns to Defendant's request to enjoin Plaintiff's state action, as authorized under the All Writs Act and as an exception to the Anti–Injunction Act. As Defendant does not invoke the Act's "expressly authorized" exception, this Court considers whether the remaining exceptions are applicable to the circumstances at bar.

1. *Necessary in Aid of Its Jurisdiction.*

In *Atlantic Coast Line R. Co. v. Brotherhood of Loc. Eng.*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970), the Supreme Court set forth the parameters of the "necessary in aid of jurisdiction" exception:

[I]f the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that

jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunction to 'protect or effectuate' judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

In *Atlantic*,[22] where the district court enjoined the subsequent state court injunction, which prevented the defendant union from exercising its federally protected right to picket, the Court expressly found that "[t]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id* at 295, 90 S.Ct. at 1747 (citations omitted). The plaintiff was free to base its "federal case on the pendent state law claims, . . . and it was free to refrain from doing so and leave the state law questions and the related issue concerning preclusion of state remedies by federal law to the state courts." *Id.* at 295, 90 S.Ct. at 1747. "Conversely, . . . it was also free to restrict the state complaint to state grounds." *Id.* at 295, 90 S.Ct. at 1747. The Court expressly found that the state action did not impair the federal court's flexibility or authority:

Therefore, the state court's assumption of jurisdiction over the state law claims and the federal preclusion issue did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that jurisdiction. Nor was an injunction necessary because the state court may have taken action which the federal court was

**22.** Initially, plaintiff sought relief in the federal court. *Atlantic*, 398 U.S. at 283, 90 S.Ct. at 1741. The district court denied plaintiff's request for an injunction which prohibited defendant union from picketing plaintiff's place of business. *Id.* at 284, 90 S.Ct. at 1741–42. Thereafter, Plaintiff sought relief from the state court, which enjoined defendant union's demonstrations. *Id.* Following the Supreme Court's decision in *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), which held that

unions have a federally protected right to picket under the Railway Labor Act that cannot be interfered with by state court injunctions, defendant moved the state court to dissolve the injunction. *Atlantic*, 398 U.S. at 284, 90 S.Ct. at 1741–42. Upon the state court's denial, defendant requested that the district court enjoin the state court injunction. The district court granted the injunction. *Id.* The Supreme Court granted certiorari to determine the validity of the federal court's injunction against the state court. *Id.*

certain was improper under the *Jacksonville Terminal* decision. *Again, lower federal courts possess no power whatsoever to sit in direct review of state court decisions.* *Atlantic,* 398 U.S. at 296, 90 S.Ct. at 1747–48. Accordingly, the Court vacated the federal injunction. *Id.* at 297, 90 S.Ct. at 1748.

In *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 644, 97 S.Ct. 2881, 2894, 53 L.Ed.2d 1009 (1977) (citing *Toucey v. New York Life Insurance Company,* 314 U.S. 118, 134–35, 62 S.Ct. 139, 144–45, 86 L.Ed. 100 (1941)), the Court further explained that the exception incorporates the historical *in rem* exception where the federal court obtains jurisdiction over the *res,* prior to the state-court action.[23] In contrast, the Court distinguished the exception's application to *in personam* actions:

> The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance. We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court; as we stated in *Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, (1922): " 'An action brought to enforce a personal liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own time, without reference to the proceedings in the other court....' No case of this Court has ever held that an injunction to "preserve" a case or controversy fits within the necessary in aid of its jurisdiction" exception ...

*Id.* at 642, 97 S.Ct. at 2893.

In *Lou v. Belzberg,* the Ninth Circuit reiterated the principles expressed in *Atlantic:*

> The general rule under the 'necessary in aid of its jurisdiction' exception is that where state and federal courts have concurrent jurisdiction over a case, neither court may prevent the parties from simultaneously pursuing claims in both courts.

'Necessary in aid of' is similar to the concept of injunctions to protect or effectuate judgments.' Neither exception applies unless injunctive relief is necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. The mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the 'necessary in aid of' exception.

*Lou,* 834 F.2d at 740.

Defendant does not claim Plaintiff's state action an *in rem* action, nor does there appear to be a *res* subject to federal jurisdiction. Hence, the historical application of the exception does not authorize the Court to enjoin Plaintiff's state action. *See White Mountain Apache Tribe v. Smith Plumbing Co.,* 856 F.2d 1301 (9th Cir.1988) (exception applies given district court's jurisdiction to preserve integrity of tribal claims, but district court's injunction overturned because no Indian property was actual subject of federal action). Rather, both the federal and state actions are *in personam* actions to which *Atlantic* and *Vendo* state that the exception does not apply. *See Atlantic,* 398 U.S. at 296, 90 S.Ct. at 1747; *Vendo,* 433 U.S. at 642, 97 S.Ct. at 2893.

Thus, the question before this Court is whether Plaintiff's state action impairs the authority and flexibility of the District Court to decide the case such that it is necessary to prevent such interference. *See Lou,* 834 F.2d at 740. Here, Defendant argues Plaintiff has filed a state court action which involves issues inseparable from the federal action. Defendant asserts that both actions "involve the same matters, the same parties, the same facts, the same technology and integrally related legal issues." (Def.Mot. p. 15). The Court finds these similarities unpersuasive as "[t]he mere existence of a parallel action in state court does not rise to the

---

**23.** Hence, traditionally federal courts applied this exception to enjoin later state actions involving property in the custody of the federal courts.

*See* 17 Wright & Miller, Federal Practice and Procedure, § 4225, p. 528–29 (1988).

level of interference with federal jurisdiction necessary to permit injunctive relief under the 'necessary in aid of' exception." *Vendo,* 433 U.S. at 642, 97 S.Ct. at 2893.

Moreover, Defendant claims an injunction is necessary because Plaintiff's state action will circumvent federal patent law. Defendant fails to demonstrate to this Court why the Protective Order operative in this action will not allow Plaintiff to disclose necessary proprietary information, including trade secrets, in order to defend the validity of its patent in the federal action. Defendant fails to establish why any judgment or ruling rendered by the state court will have res judicata effect on the District Court's decisions, or will collaterally estop the federal court from rendering a judgment. Defendant fails to show how any other action by the state court will hinder or destroy the District Court's jurisdiction of the federal action or will impair its flexibility.

And, in contrast to *Atlantic* and *Vendo,* concurrent jurisdiction appears not to exist. Plaintiff argues that its state court action is solely based on California law and seeks California remedies, does not present a federal question, and lacks the requisite diversity between the parties. Federal jurisdiction is solely based on the Court's discretion to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a). Defendant does not dispute this. This Court finds that the absence of concurrent jurisdiction further underscores Plaintiff's right to choose its forum, *see Atlantic,* 398 U.S. at 295, 90 S.Ct. at 1747, and the state court's freedom and power to exercise jurisdiction over Plaintiff's state action, notwithstanding the possibility that it may render an action deemed improper by the federal court. *See Atlantic,* 398 U.S. at 295, 90 S.Ct. at 1747. Again, "lower federal courts possess no power whatsoever to sit in direct review of state court decisions." *See Atlantic,* 398 U.S. at 296, 90 S.Ct. at 1747.

In adherence to the principles established in *Atlantic, Vendo,* and *Lou,* this Court finds that Defendant fails to demonstrate that an injunction is "necessary to prevent [the] state court from so interfering with a federal court's consideration or disposition of a case

as to seriously impair the federal court's flexibility and authority to decide that case." Accordingly, this Court finds that the "necessary in aid of jurisdiction" exception does not authorize enjoining Plaintiff's state action.

2. *Necessary to Protect or Effectuate a Judgment.*

■ "The third enumerated exception, to the Anti–Injunction Act, permitting a federal court to enjoin state court proceedings to 'protect or effectuate its judgments,' is known as the relitigation exception." *Blalock,* 982 F.2d 371 (9th Cir.1992). The exception "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick,* 486 U.S. at 147, 108 S.Ct. at 1690. "It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick,* 486 U.S. at 147, 108 S.Ct. at 1690. "The proper scope of this exception is perhaps best illustrated by [the] Court's decision in *Atlantic* " where it was made clear that "[a]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Id.* at 147–48, 108 S.Ct. at 1690. And, " 'necessary in aid of' is 'similar to the concept of injunctions to protect or effectuate' judgments." *Atlantic,* 398 U.S. at 295, 90 S.Ct. at 1747; *Lou,* 834 F.2d at 740. "Neither exception applies unless injunctive relief is necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic,* 398 U.S. at 295, 90 S.Ct. at 1747; *Lou,* 834 F.2d at 740.

Defendant argues that "an injunction is necessary to effectuate and prevent further frustration" of the Protective Order. (Def.Mot. p. 14). Yet, in order to enjoin Plaintiff's state action, the District Court must have actually decided the claims and issues in Plaintiff's state action. *See Chick,* 486 U.S. at 147–48, 108 S.Ct. at 1689–90. Here, Plaintiff's federal action alleges a patent infringement, pursuant to federal law,

and not misappropriation of trade secrets, pursuant to California law. Hence, the District Court has neither decided, nor addressed Plaintiff's state issues and there is no federal judgment of the issues which requires insulation.

 And, while the District Court granted the Protective Order, the Court finds that this is not a "decision" or "judgment" within the scope of the exception. The Protective Order was issued pursuant to Federal Rule of Civil Procedure 26(c), and therefore constitutes a discovery order. "A discovery order, unlike a final order, is interlocutory and non-appealable under 28 U.S.C. § 1291." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir.1984) (citing *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 326–27 (9th Cir.1961)); *See also Societe Nationale Industrielle Aerospatiale v. United States District Court for the District of Alaska*, 788 F.2d 1408, 1410 n. 2 (1986) *vacating as moot*, 823 F.2d 382, 383 (9th Cir.1987). As such, the Protective Order is not final order in which the parties litigated in a full and fair hearing before the District Court any issue now before the state court.

Finally, given this Court's finding that Plaintiff's state action does not violate the Protective Order, and that there is no reason why the parties cannot enter into a state protective order, an injunction is *unnecessary* to effectuate and prevent further frustration of the Protective Order.

In adherence to the principles established by *Atlantic* and *Chick*, this Court finds that Defendant fails to demonstrate that it is "necessary to prevent [Plaintiff's state action] from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic*, 398 U.S. at 295, 90 S.Ct. at 1747; *Lou*, 834 F.2d at 740. The Court finds that the "necessary to effectuate or protect a judgment" exception does not authorize enjoining Plaintiff's state action.

Based on the aforementioned analyses, this Court finds that Defendant fails to demonstrate that the circumstance at bar fit within the confines of the Anti–Injunction Act's exceptions. Thus, the Court finds that the District Court may not enjoin Plaintiff's state action. *Lou*, 834 F.2d at 740 (citations omitted) ("Unless one of the statutory exceptions applies, a federal injunction restraining prosecution of a law suit in state court is *absolutely prohibited*.") (emphasis added).

## IV. Whether the District Court Should Order Plaintiff To Amend the Federal Pleadings.

### A. *Defendant's Arguments.*

Defendant argues that the essence of the Protective Order confers federal jurisdiction, and therefore Plaintiff should be ordered to seek the District Court's leave to amend the federal pleadings. (Def.Mot. p. 18). Alternatively, Defendant argues that Plaintiff should have filed its state action in federal court because supplemental jurisdiction exists. (Def.Reply, p. 9). Plaintiff's federal and state claims make up the same case and controversy, as Plaintiff's actions arise from a "common nucleus of operative facts." (Def.Reply, p. 9).

### B. *Plaintiff's Arguments.*

Plaintiff argues that the Protective Order does not require that it amend the federal pleadings to include its state action. (Pl.Opp. p. 11). And, as discussed earlier, the California Superior Court is the appropriate forum because it has non-discretionary subject matter jurisdiction of Plaintiff's state claims. (Pl.Opp. p. 11). Again, Plaintiff asserts that its state action does not present a federal question and lacks the requisite diversity for federal jurisdiction, pursuant to 28 U.S.C. § 1332(c). (Pl.Opp. p. 11). Thus, the only basis on which federal jurisdiction lies is supplemental jurisdiction. (Pl.Opp. p. 11). Plaintiff argues that the District Court would have declined to exercise its supplemental jurisdiction given the factual distinctions between the two actions and the potential confusion and prejudice to the jury. (Pl.Opp. p. 11).

### C. *Whether The District Court Should Order Plaintiff to Amend the Federal Pleadings.*

As stated earlier, review of the Protective Order demonstrates that there is no express

provision which requires that Plaintiff amend the federal pleadings to include its state claims.

And, Defendant's position that Plaintiff should have filed its state action in conjunction with the federal action, in accordance with the Protective Order's provisions, is unpersuasive. Here, Defendant argues that through the Protective Order, the parties consented to *in-personam* jurisdiction before the District Court, and cites *M/S Bremen v, Zapata Off-Shore Co.,* 407 U.S. 1, 11–12, 92 S.Ct. 1907, 1913–14, 32 L.Ed.2d 513 (1972). While the Court expressly stated in *M/S Bremen* that "[p]arties may agree in advance to submit to the jurisdiction of a given court to permit notice to be served by the opposing party, or even to waive notice altogether," *Id.* at 11, 92 S.Ct. at 1913, this Court finds *M/S Bremen* is not dispositive of whether Plaintiff should have filed its state action in the federal court. In *M/S Bremen,* the parties' contract contained a specific forum selection clause, "[a]ny dispute arising must be treated before the London Court of Justice." *Id.* at 2, 92 S.Ct. at 1909. Here, the Protective Order does not include any specific language which states that the parties agreed that any dispute arising during the course of the federal litigation was subject to the District Court's jurisdiction. Defendant and Plaintiff are companies composed of business men who possess sufficient contractual knowledge, expertise, and common sense. Moreover, both employ counsel of significant legal expertise and negotiation abilities. If Defendant and Plaintiff agreed to *in-personam* jurisdiction of the District Court, the Protective Order would include language to that effect. The fact that forum selection clauses are valid and enforceable does not mean that, here, the parties have entered into such a contract. Thus, this Court shall not insert language into the Protective Order where none exists. *See Matter of Bowoon Sangsa Co., Ltd.,* 720 F.2d 595, 598 n. 4 (9th Cir. 1983) (distinguishing case from *Bremen* because contract only specified application of American law and not any particular forum).

And, notwithstanding the ability to contract to *in-personam* jurisdiction, "[i]t is well established that litigants cannot confer jurisdiction by consent where none exists." *U.S. v. Judge,* 944 F.2d 523, 525 (9th Cir.1991) (citing *Insurance Corp. Of Ireland v. Compagnie des Bauxites,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982)). Hence, the Protective Order itself cannot mandate that Plaintiff's state action become part of the federal action.

Hence, the Court dismisses Defendant's argument.

Additionally, the Court declines to determine whether supplemental jurisdiction exists. Neither Defendant's, nor Plaintiff's moving papers sufficiently relate the factual and legal issues of Plaintiffs federal and state actions such that this Court may determine whether supplemental jurisdiction exists, pursuant to 28 U.S.C. § 1367(a). This Court opines that given the District Court's longstanding familiarity and expertise with the issues in Plaintiffs federal action, this determination is best left to the District Court.

Based on the foregoing analysis, this Court finds that Plaintiff is not expressly, nor impliedly, required by the Protective Order to amend the federal action to include its state claims.

## V. Whether An Award of Defendant's Attorney's Fees Should Be Assessed Against Plaintiff.

This Court finds that Defendant and Plaintiff should pay their respective attorney's fees. As stated above, this Court finds that Plaintiff is not in civil contempt of the Protective Order and that Plaintiff should not be sanctioned nor fined. This Court finds that the District Court may not enjoin Plaintiffs state action. And, this Court finds that Plaintiff is not required to amend its federal action to include the claims pled by its state action.

Accordingly, this Court finds that an award of Defendant's attorney's fees should not be imposed against Plaintiff.

## VI. Whether Defendant should be sanctioned, pursuant to Federal Rule of Civil Procedure 11.

Having read Defendant's and Plaintiffs moving papers, this Court declines to find

that Rule 11 sanctions should be imposed against Defendant for filing its April 12, 1996 Motion to Enforce the Protective Order. While Defendant's subsequent Motion to Enforce the Protective Order, filed on May 10, 1998, appears not to have been filed within the safe harbor period, it sufficiently set forth the applicable law. Hence, the Court deems Defendant's initial motion as harmless error.

### CONCLUSION

Based on the aforementioned Report, this Court finds that:

(1) Plaintiff's state action does not violate the Protective Order and Plaintiff should not be held in civil contempt;

(2) Neither Plaintiff, nor Plaintiff's counsel, should be sanctioned or fined;

(3) The District Court may not enjoin Plaintiff's state action;

(4) Plaintiff is not required under the Protection Order to amend its federal pleadings to include the state action, and;

(5) An award of attorney's fees should not be assessed against Plaintiff;

(6) Defendant and Plaintiff should bear their own costs;

(7) Defendant should not be sanctioned, pursuant to Federal Rule of Civil Procedure 11.

Accordingly, this Court recommends that the District Court DENY Defendant's Motion to Enforce the Protective Order and DENY Defendant's Motion for Sanctions.

IT IS SO ORDERED.